# EXHIBIT 24

3/8/26, 10:35 AM  Anthropic Declared a National Security Supply Chain Risk: 4 Things Every Government Contractor Should Know Right Now

Case 3:26-cv-01996-RFL   Document 6-30   Filed 03/09/26   Page 2 of 4

# Anthropic Declared a National Security Supply Chain Risk: 4 Things Every Government Contractor Should Know Right Now

**Category:** In the News, Blog

**Published:** March 3, 2026

**By:** Isaac Natter, David Panzer, Duc Nguyen, Matthew Thrasher

On Friday, February 27, 2026, President Trump directed Executive Branch agencies to stop using Anthropic's technologies with a six-month "phase out period." Following the President's post, Secretary Hegseth declared on X that he will designate Anthropic as a "Supply-Chain Risk to National Security" and, as a result, no entities that do business with the U.S. Military would be permitted to conduct any commercial activity with Anthropic. This demand by the Administration – in the context of failed contract negotiations – was described colorfully by President Trump's former Senior AI Policy Advisor, Dean Ball, as " attempted corporate murder."

The historic move against Anthropic has potentially vast ramifications, not just for Anthropic, or the AI/technology industry, but for all government contractors. These announcements follow a breakdown in negotiations between the Pentagon and Anthropic over whether the company could place limits on the Government's use of its technology. Although the Anthropic-Administration dispute is the direct impetus for the actions, it should also be seen in the context of the general trend of the Administration's efforts to exert unprecedented control over the defense industrial base, while desiring unprecedented speed of delivery and speed of acquisition. For example, in January of this year the President issued an Executive Order seeking to dictate terms for corporate governance of defense contractors (see past Fluet insights on this). Like that Executive Order, it remains to be seen how the implementation of this policy against Anthropic will unfold.

Here are four things all contractors should be tracking now to help navigate these turbulent waters:

3/8/26, 10:35 AM  Anthropic Declared a National Security Supply Chain Risk: 4 Things Every Government Contractor Should Know Right Now

Case 3:26-cv-01996-RFL    Document 6-30    Filed 03/09/26    Page 3 of 4

- **The Government hasn't identified its legal authority yet, which matters.** Neither the President nor the Secretary of Defense has cited the specific statutory or regulatory basis for these actions. The scope of the restrictions on contractors depends entirely on which authority is invoked, and each carries very different implications for contractors.

  - Under 10 U.S.C. § 3252, a supply chain risk designation only applies to "covered systems"; an information system that qualifies as a national security system. Section 3252 does not give the Secretary the power to prohibit contractors from using Anthropic for their own internal purposes, other government contracts not involving national security systems, or for commercial work.

  - If the Government invokes a broader authority like 41 U.S.C. § 4713, the impact widens dramatically. Section 4713 can be used to both exclude that source from government contracts entirely and to direct contractors not to consider that source for subcontracts. And under FAR Subpart 9.4 the Government could seek suspension and debarment, which could bar a contractor from receiving new contract awards and subcontract awards above threshold amounts.

- **Every potential authority requires specific procedural steps the Government doesn't appear to have taken yet.** None of these authorities exist in a vacuum. The Government can't simply tweet a company out of the defense market.

  - To exclude a source as a supply chain risk under § 3252, for example, the Government must take a number of procedural steps, including making a written determination that the exclusion is necessary to protect national security and less intrusive measures are not reasonably available to reduce the supply chain risk and notifying certain congressional committees about the supply chain risk and the basis for the written determination.

  - Before excluding a source under the authority of § 4713, the head of the agency must also take certain procedural steps. These include making a factual assertion of the risk and providing a notification to the company of that determination. The company then has 30 days to submit information and argument in opposition. Furthermore, § 4713 requires the Federal Acquisition Regulatory Council to prescribe implementing regulations for the authority – which is not yet complete and still in the proposed rulemaking phase. Expect, at a minimum, additional requirements to be placed on contractors to certify that compliance when implementation occurs, greatly expanding contractor exposure to the False Claims Act (FCA).

  - Finally, excluding a party from eligibility for contract award through suspension and debarment requires the agency, acting through a properly designated Suspending and Debarring Officer, to go through a specific process that includes notification and hearing.

- **Anthropic will fight this — and may well win.** Anthropic has publicly stated it will challenge these actions in court and will likely do so under the Administrative Procedure Act and possibly constitutional grounds. The fact that this dispute stems from *contract negotiations over terms of use*, not actual security vulnerabilities or

3/8/26, 10:35 AM    Anthropic Declared a National Security Supply Chain Risk: 4 Things Every Government Contractor Should Know Right Now

Case 3:26-cv-01996-RFL    Document 6-39    Filed 03/09/26    Page 4 of 4

adversarial conduct (at least not as publicly articulated), makes meeting the statutory definition of "supply chain risk" under § 3252, for example, extremely difficult. Although fighting the Administration is always a costly endeavor, especially for businesses that rely on Government contracts, it can be done successfully, especially with the help of qualified counsel.

- **Contractors need to begin auditing their Anthropic exposure now.** Don't wait for the legal dust to settle, or even for the implementation to start. Contractors should immediately map where Anthropic products touch their government contracts (directly and through subcontractors), assess whether those contracts involve national security systems, and prepare contingency plans for transition, if required. If Anthropic is designated a covered article under 4713, a more comprehensive mapping of its products across all enterprise applications and extensions may be required. Contractors should expect that the agency responsible for their contracts will inform them about the impacts to their contracts, including whether a contract modification is likely. If a contracting officer demands that a company not use Anthropic, and puts that demand into a contract modification, that could entitle the company to additional consideration.

The next steps the Government will take are dependent on the authority it is exercising to terminate its business with Anthropic. This type of Government action is complicated and fraught with implementation risk (*see e.g.*, the Tik Tok saga). But as Jessica Tillipman of GW Law School has described, the AI procurement context compounds the potential complications for the Government and for implementation, particularly as the Government seeks to use the speed of commercial item acquisition while desiring more bespoke terms inconsistent with that acquisition model.

Defense contractors that are worried about being caught in the crossfire should assess their exposure, monitor the situation for updates, and be deliberate before acting. Advice of counsel may be helpful if considering specific business decisions based on potential government action. Fluet will continue to monitor this situation and related events and our attorneys, with deep experience in Government and industry, are ready to assist defense contractors in navigating these complex rapidly evolving situations.