**Pages 1 - 16**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Rita F. Lin, Judge

| | |
|---|---|
| ANTHROPIC PBC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )  **NO. 3:26-CV-01996-RFL** |
| | ) |
| U.S. DEPARTMENT OF WAR, | ) |
| et al. | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

San Francisco, California
Tuesday, March 10, 2026

**TRANSCRIPT OF REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiff:

      WILMER CUTLER PICKERING HALE & DORR LLP
      50 California Street
      San Francisco, California 94111
  BY:  **JAMES J. MONGAN, ATTORNEY AT LAW**

      WILMER CUTLER PICKERING HALE & DORR LLP
      2100 Pennsylvania Avenue, NW
      Washington, D.C. 20037
  BY:  **KELLY P. DUNBAR, ATTORNEY AT LAW**

For Defendants:

      U.S. DEPARTMENT OF JUSTICE
      Consumer Protection Branch
      Post Office Box 386
      Washington, D.C. 20044-0386
  BY:  **JAMES W. HARLOW, TRIAL LAWYER**

REPORTED REMOTELY BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
                 CSR No. 7445, Official U.S. Reporter

**Tuesday - March 10, 2026**                                    **3:00 p.m.**

                          P R O C E E D I N G S

                              ---o0o---

          **THE COURTROOM DEPUTY:**  Court is now in session. The Honorable Rita F. Lin is presiding.

          Calling Civil Action 26-1996, Anthropic PBC versus United States Department of War, et al.

          Counsel, please state your appearances for the record, beginning with counsel for plaintiffs.

          **MR. MONGAN:**  Good afternoon, Your Honor.  Michael Mongan from WilmerHale on behalf of plaintiff, Anthropic Public Benefit Corporation.

          **MR. DUNBAR:**  Good afternoon, Your Honor.  Kelly Dunbar.  I'm also on behalf of Anthropic, from WilmerHale.

          **MR. HARLOW:**  Good afternoon, Your Honor.  James Harlow with the Justice Department on behalf of the defendants.

          **THE COURT:**  Good afternoon to all of you.

          Yesterday I put in an order asking the parties to be prepared to discuss the question of whether it might make more sense to address Anthropic's motion as a motion for preliminary injunction, skip the TRO and just go straight to preliminary injunction on an expedited schedule.  I'm conscious of how weighty the issues involved are, but I'm also conscious of the need for speed, and I think that this could better address both of those desires.

But I'm open to hearing from the parties if there's something else you think I should consider.

Let me start with Mr. Mongan.

**MR. MONGAN:** Yes.  Thank you, Your Honor, and thank you for setting a status conference so quickly.

I understand the Court's order to ask us to discuss, first, whether the Court should treat our motion as a motion for preliminary injunction and, second, if so, whether we're comfortable with the proposed schedule which would culminate in a hearing on April 3rd.

The short answers, that I hope I can elaborate on briefly, are that we are certainly comfortable treating it as a preliminary injunction motion but we have concerns about the proposed schedule.

And if I can elaborate, we are here because the --

**THE COURT:**  Please.

**MR. MONGAN:**  -- the actions of defendants are causing concrete, irreparable injuries to Anthropic, to its revenues, its business relationships, its reputation, and its constitutional rights, and those injuries are mounting day by day, so we need relief as soon as possible.

But we also thought it important, under these extraordinary circumstances, for the Government to receive notice and for the Court to have adversarial briefing and argument structured in a manner that would be most helpful to

the Court.  So we styled the motion to preserve the Court's flexibility to treat this either as a TRO motion or as a PI motion, and we're very comfortable with the second path if that's the Court's preference.

We do have concerns about the proposed schedule, which would have the hearing held five weeks after the directives from the President and the Secretary of War targeting Anthropic.  We had hoped for an earlier hearing because of the real and irreparable harm that Anthropic is suffering every day.  And I don't want to get ahead of ourselves, but at some point this afternoon, we can discuss that in more detail because I do think it bears on the scheduling question.

I would also note that we're particularly concerned about the possibility of additional actions by defendants that would inflict even greater injury on Athr- -- pardon me -- on Anthropic between now and April 3rd.  And this is not just speculation on our part.

Defendants have already threatened to invoke the Defense Production Act to commandeer our technology.  The President has threatened to impose criminal consequences.  After we filed our papers yesterday, *Axios* and *CBS News* reported that the President is planning an executive order targeting Anthropic.  And those threats could very well materialize any time between now and April 3rd.

Now, if defendants can commit that there will not be

additional actions by the executive branch between now and April 3rd that will injure Anthropic, directly or indirectly, I think then we would be less concerned about following the proposed schedule Your Honor outlined yesterday.

But absent that assurance, we're very worried that we might well have to come back to you in a few days with a TRO motion, or some other form of emergency filing, to address yet another retaliatory action; and for that reason, a more expeditious schedule seems both more efficient and appropriate under these unprecedented circumstances.

**THE COURT:**  What would your proposal for that schedule be?

**MR. MONGAN:**  Well, Your Honor, what we had laid out in the papers yesterday envisioned a hearing on this Friday.  I'm assuming that that is probably not feasible at this point.

I think that if we could get to a hearing next week, that would be optimal from our standpoint -- and I know that the Court has other commitments but -- perhaps by Friday, the 20th, or earlier in the week, if possible; and we could work backwards from there to adjust the briefing schedule to make sure that the Court had adequate time with our papers in advance of the hearing.

**THE COURT:**  And you mentioned wanting to make a record about what Anthropic's concerns were with respect to a schedule that set the hearing a little farther out.

I will say that the reason I wanted to set that hearing farther out is to give defendants a full opportunity to respond and to provide the record that they need to in response to what are very serious allegations.  I mean, I think the case is quite consequential from both sides on this issue, and I want to make sure that I'm deciding this on an expedited record but, also, on as full a factual record as I can.

So tell me what your thoughts are on -- I know you raised some of the concerns about additional executive action, but is there anything else you think I should know in this regard?

**MR. MONGAN:**  Well, I think that the point that I wanted to elaborate on is that, as our papers reflect, there really are irreparable injuries that are concrete and that are mounting every day; and the longer that this continues, the more our client is harmed by those irreparable injuries.

And to expand on that just briefly, I'd urge the Court to look at the declarations from our chief commercial officer and our CFO, which are at Docket 6-4 and 6-5.

But in brief, much of our revenue comes from enterprise customers.  We've had more than a hundred enterprise customers contact us in recent days who are now expressing doubt about continuing to work with us.  We have customers who have delayed contract discussions or canceled sales meetings.

To give a few examples, a financial services company paused negotiations on a $50 million contract; a pharmaceutical

company asked to shorten the duration of its contract by ten months; a fintech company explicitly tied the cutting of its $10 million contract down to $5 million based on the Department of War situation.  We've had university systems and business-to-business companies that have switched to competing AI companies.

And this is all the predictable result of defendants' actions and the uncertainty they've created, as well as the fact that defendants have been affirmatively reaching out to our customers and pressuring them to stop working with Anthropic and switch to other AI companies.

All told, our CFO estimates the harm to Anthropic's 2026 revenues will range from hundreds of millions of dollars to billions of dollars.

And, Your Honor, that is to say nothing of the harms to Anthropic's reputation in the eyes of customers and investors and others, which can cause long-term and irreversible damage, especially for a frontier AI company like Anthropic at this moment.  And that's on top of the irreparable injury that Anthropic is suffering every day, as a matter of law, from having its constitutional rights violated.

**THE COURT:**  Let me give the Government an opportunity to respond.

**MR. HARLOW:**  Thank you, Your Honor.

As far as the Government is concerned, we agree both with

your proposal to proceed under a preliminary -- motion for a preliminary injunction rather than a TRO, and the Court's proposed schedule is also fine with the Government.  We're prepared to meet the briefing deadline of March 18 and the hearing deadline of April 3.

I think Your Honor's anticipated our needs and really just sort of hit that right on the head, that this is a very consequential case.  There are nearly 20 agencies that have been named as defendants.  It is, I can tell you, an enormous process to try to wrangle all those different agencies and try to figure out who's who, what the relationships are with Anthropic, to get into the backdrop of the agency actions that have been challenged here.

We want to make sure that we actually provide Your Honor with a factual record that is clear and accurate, and sound briefing; and really, the Government does feel that March 18 is a date that would allow us to do that.  Anything earlier than that, I think, is just not going to be feasible from the Government's perspective.

I can respond a little bit on the irreparable harm points. I'd note that, having reviewed those declarations, certainly those declarations don't establish that there's any imminent irreparable harm to Anthropic that would occur somehow between next week and a PI hearing on April 3 and then the Court's order presumably to follow shortly after that.  There's nothing

that's going to happen in that span of a couple weeks that Anthropic has established that there's a need for the Court to even move this already expedited preliminary injunction proceeding up even further.

I can elaborate further, but I can also just stop there, Your Honor.

**THE COURT:** One thing I'm thinking about is I could compress the schedule a little more, while also making sure I'm giving the Government enough time to put in its factual record.

I was thinking, as an alternative, that I could set the Government's response deadline as the 17th, March 17th. That's almost as much time as I'm currently giving you. And then plaintiffs could reply by the 20th. And then I could have the hearing on the 24th, in the afternoon at 1:30.

Would that work for plaintiffs?

**MR. MONGAN:** Your Honor, with the proviso that there may very well be a need for us to come back to the Court if there is some change of circumstances and ask for more expedited relief, I think that we would appreciate the Court's flexibility on that point, and that schedule would work for us. And we can be in touch with you and the defendants if there are changed circumstances.

I would just note, what I didn't hear from my friend from the federal government was any commitment that there won't be changed circumstances. And so that's holding out the

possibility of a whole host of retaliatory executive actions on top of what we've already experienced, and we would want to preserve the ability to seek relief very quickly if the circumstances change even more.

**THE COURT:**  Let me just check in with defendants on your ability to commit on that issue.

**MR. HARLOW:**  On what Mr. Mongan's alluded to about potential actions?  No, I'm not prepared to offer any commitments on that issue.

**THE COURT:**  Given that, I'll set the schedule that I described.

Is there anything else the Government would like me to know about the schedule --

**MR. HARLOW:**  I think --

**THE COURT:**  -- that I just described?

**MR. HARLOW:**  Well, so on the -- I think a couple things.

One, at least on the hearing date for March 24th, that's not going to work for the Government, just due to some other scheduling commitments.  I can confirm -- I would need to confirm with other folks about the twenty- -- about a different hearing date.

We vetted the date of April 3.  So I could represent to the Court that that would be a date that the Government could meet, but I would need to go confirm with other folks.  And I

don't believe that the 24th will work.

**THE COURT:** Why is it that you can't do it on the 24th?

**MR. HARLOW:** Because the -- the -- I -- right now it may not be that I would be the attorney who's appearing and actually arguing the preliminary injunction motion, and so there's some scheduling commitments with the folks who would actually argue that motion.

I believe that the 26th might be working, if March 26th is available.

**THE COURT:** I know the federal government has a lot of lawyers. One of them is you, and I'm sure there are others who are very capable of arguing it.

I think I need to set a date. I'm not hearing that you're unavailable. I'm sure you're very competent and could provide excellent counsel to the Government.

I'm going to set 1:30 on the 24th for the hearing. I'm not hearing a reason that you're unavailable then. And I am conscious of the need to move quickly. Particularly in light of the Government's unwillingness to commit to holding off on any other action, I think I need to address the concern that Mr. Mongan raised as soon as possible.

So I'm putting it on the 24th at 1:30. I'll leave it to you to work out the staffing considerations on the Government's end. Setting the response deadline as March 17th. Plaintiffs'

reply is due on March 20th.

And what is the status of service of process on defendants from Mr. Mongan?

**MR. MONGAN:**  Yes, Your Honor.

We've been working on that expeditiously since we received the summons.  As I understand it, we have sent copies of the complaint and the summons by Certified Mail to each agency and official named as a defendant.  I understand those should be delivered in the coming days, if they haven't been received yet.

We also effect -- pardon me -- effected in-person service and service by Certified Mail on the U.S. Attorney's Office for the Northern District of California, and I understand that that has already happened.

**THE COURT:**  Great.  And I will also say that if there is a request from the Government or from the plaintiff to have the hearing by Zoom, I'm happy to accommodate it that way.  I know we're setting this on a short timeline, and hopefully, that will help with some scheduling issues on the DOJ's end.

Is there anything else the parties believe we should address?

**MR. MONGAN:**  Your Honor, just one housekeeping matter.

There's a pending administrative motion for leave to submit a 25-page memorandum in support of the motion. Candidly, we had our motion prepared and ready for filing

pursuant to the local rules before we'd received notification that we were assigned to Your Honor.  We are, of course, aware of your default page limits.

Given the extraordinary circumstances here, we would respectfully request that the Court grant leave for the 25-page motion; and, of course, we would consent to defendants having an equivalent extension for their opposition if they request it and Your Honor is inclined to permit it.

**THE COURT:**  That is fine.  As we all agree, this case is consequential and requires a significant amount of attention.  So I think 25 pages for both sides is fine on the opening and response, and I'll set 15 pages as the reply limit.

**MR. MONGAN:**  Thank you, Your Honor.

**THE COURT:**  Anything else from defendants in terms of things we should address today?

**MR. HARLOW:**  No, Your Honor.

**THE COURT:**  I did have one question for the parties.

I did see information about another case that's proceeding in the District of Columbia, in the Circuit Court for the District of Columbia, involving a lot of the similar issues.  Has -- I suppose my question is for Anthropic.

Are you intending to ask for an accelerated schedule in that case?  And what is the plan in terms of how that case will proceed in relation to this case?

**MR. MONGAN:**  Sure.  If it pleases the Court, I can

give just a little bit of background on why we're proceeding in that court.  That is the result of the way that defendants have gone about these actions.

So on February 27th, the President and the Secretary of War both issued public directives effective immediately.  The Secretary of War did not cite any legal authority.  We didn't hear anything further from the Secretary of War about the purported legal basis for his supply chain risk designation until the evening of March 4th, when Anthropic received two letters from the Secretary.

The first letter invoked the authority that's been addressed in the complaint with this Court, 10 U.S.C. Section 3252.  The second invoked a second separate statute, 41 U.S.C. Section 4713.

And Congress has challenged -- sorry -- channeled challenges to 4713 designations directly to the D.C. Circuit for review based on the administrative record.  So that's the reason why we filed the petition for review in the D.C. Circuit yesterday, and that proceeding is limited to the 4713 designation.

In terms of the timing of the D.C. Circuit action, our notional plan has been to seek a stay pending review of the Secretary's 4713 action later this week, probably tomorrow; and that's because that happened a little bit later because Federal Rule of Appellate Procedure 18 requires a party to try and seek

relief from an agency before seeking a stay pending judicial review.

So we intend to meet and confer with the Government. We filed the stay request with the Secretary of War on Monday afternoon, asking for a decision by 12:00 p.m. Eastern tomorrow. We informed the Secretary of War that if there was no decision by then, we would treat that as a denial of our stay request by the agency and proceed to the D.C. Circuit.

And then we would obviously want to move expeditiously there for the same reasons we've discussed today, but we would intend to meet and confer with the Government and try to reach a schedule for that proceeding as well.

**THE COURT:** Okay. Anything else the Government wants me to know about the parallel action pending in the D.C. Circuit?

**MR. HARLOW:** Not at this time, Your Honor.

But one thing I just wanted to -- since I -- Mr. Mongan went ahead and sort of preempted me on the page limits, I think Your Honor had said we could file 25 for our opposition? Would it be possible to get five more pages, to 30, just given the fact that plaintiffs will have two cracks with the opening brief and their reply?

**THE COURT:** I think the district standard briefing schedule is 25 for both sides and then 15 for reply, but I'm fine with you doing 30 for your opposition. I'll just give --

I'm going to then give plaintiffs five more on their reply.

I think it makes sense in this case to have more room to make sure that we get it right.

MR. HARLOW:  Okay.

THE COURT:  So let's do -- plaintiffs already filed their opening brief of 25, so I'll just leave the page limit for that, and then 30 for the opposition and 20 for the reply.

MR. HARLOW:  Thank you, Your Honor.

MR. MONGAN:  Thank you.

THE COURT:  Thank you.  Be well.

THE COURTROOM DEPUTY:  Court is adjourned.

(Proceedings adjourned at 3:21 p.m.)

---oOo---

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Thursday, March 12, 2026

_____

Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
Official United States Reporter