1  CROWELL & MORING LLP
   Warrington S. Parker III (SBN 148003)
2    WParker@crowell.com
   3 Embarcadero Center
3  26th Floor
   San Francisco, CA 94111
4  Telephone: 415.986.2800
   Facsimile:  415.986.2827
5
   CROWELL & MORING LLP
6  Sharmistha Das (*pro hac vice*)
     SDas@crowell.com
7  Matthew F. Ferraro (SBN 296622)
     MFerraro@crowell.com
8  Alexandra Barbee-Garrett (*pro hac vice* forthcoming)
     ABarbee-Garrett@crowell.com
9  Stephanie Crawford (*pro hac vice* forthcoming)
     SCrawford@crowell.com
10 1001 Pennsylvania Avenue NW
   Washington, DC 20004
11 Telephone: 202.624.2500
   Facsimile:  202.628.5116
12
   Attorneys for *Amicus Curiae*
13 MICROSOFT CORPORATION

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                         SAN FRANCISCO DIVISION

17

18 | ANTHROPIC PBC, | Case No. 3:26-cv-01996-RFL |
|---|---|
| Plaintiff, | **BRIEF OF *AMICUS CURIAE* MICROSOFT CORPORATION IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER** |
| v. | |
| U.S. DEPARTMENT OF WAR, et al., | |
| Defendants. | Date:  March 24, 2026<br>Time:  1:30 p.m.<br>Ctrm.:  Courtroom 15 - 18th Floor<br>Judge: Hon. Rita F. Lin |
| | Date Action Filed: March 9, 2026 |

CROWELL & MORING LLP
ATTORNEYS AT LAW

BRIEF OF AMICUS CURIAE MICROSOFT
CORPORATION ISO PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-01996-RFL

# **TABLE OF CONTENTS**

Page

IDENTITY AND INTEREST OF *AMICUS CURIAE* ............................................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................................... 2

ARGUMENT ............................................................................................................................................ 3

    I.   A Temporary Restraining Order Would Serve the Public Interest ..................................... 3

        A.  Immediate Implementation of the Determination Imposes Significant Costs and Risks on Government Contractors ........................................... 4

        B.  The Determination is a Broad Remedy that Will have Unintended Consequences for Government Contractors and American Business ....................... 5

        C.  A Temporary Restraining Order Will Permit Exploration of a Negotiated Resolution ........................................................................................ 9

CONCLUSION ...................................................................................................................................... 10

CROWELL & MORING LLP
ATTORNEYS AT LAW

-i-

BRIEF OF AMICUS CURIAE MICROSOFT CORPORATION ISO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-01996-RFL

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) .................................................................................. 3, 4

*Valle Del Sol Inc. v. Whiting*,
  709 F.3d 808 (9th Cir. 2013) ......................................................................................... 6

**Statutes**

10 U.S.C. § 3252 ........................................................................................................... 1, 7

10 U.S.C. § 3252(d)(4) ...................................................................................................... 6

40 U.S.C. § 11101(6)(A) ................................................................................................... 4

41 U.S.C. § 1323 ................................................................................................................ 6

44 U.S.C. § 3552(b)(6)(A) ................................................................................................ 4

**Other Authorities**

48 C.F.R. § 252.239-7018 ................................................................................................. 5

*Acronis AG FASCSA Exclusion Order*, Off. Dir. Nat'l Intel. (July 11, 2025),
  https://sam.gov/exclusion/189befb2-b60a-4f2a-b519-2fdaedcf4577/view ............................. 6

*America's AI Action Plan*, The White House (July 2025),
  https://www.whitehouse.gov/wp-content/uploads/2025/07/Americas-AI-
  Action-Plan.pdf ........................................................................................................... 9

*Defense Trusted Systems and Networks*, Off. Sec'y Def. (Dec. 28, 2018),
  https://www.acq.osd.mil/asda/dpc/cp/cyber/docs/section-
  3252/3252_FAQs.docx ............................................................................................... 7

*GSA Federal Acquisition Service Proposed Government AI System Terms and
  Conditions*, Gen. Serv. Admin.,
  https://buy.gsa.gov/interact/system/files/GSA_Federal_Acquisition%20Service
  %20Proposed%20Government%20AI%20System%20Terms%20and%20Cond
  itions.pdf .................................................................................................................... 7

*Pentagon's Anthropic Risk Decision Spurs Lawmaker Confusion,* Bloomberg
  Gov't (Mar. 5, 2026), https://news.bgov.com/bloomberg-government-
  news/pentagons-anthropic-risk-decision-spurs-confusion-in-congress .................... 7

-ii-

BRIEF OF AMICUS CURIAE MICROSOFT
CORPORATION ISO PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-01996-RFL

*Our agreement with the Department of War*, OpenAI (Mar. 2, 2026),
 https://openai.com/index/our-agreement-with-the-department-of-war/ .................................... 8

-iii-

BRIEF OF AMICUS CURIAE MICROSOFT
CORPORATION ISO PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-01996-RFL

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

Microsoft Corporation ("Microsoft") is a leading technology innovator. For fifty years, Microsoft has developed, licensed and sold a wide range of programs, devices and services that transform the ways people work, play, and communicate. It invests hundreds of billions of dollars in research, development, and the operation and promotion of new technologies, products, and services to compete in dynamic technology markets. Microsoft also creates platforms and tools powered by artificial intelligence ("AI") to deliver innovative solutions that meet the evolving needs of its customers. It has developed Microsoft 365 Copilot, an advanced generative AI application that integrates large language models into its suite of search, productivity tools, cloud services, and other enterprise applications. Microsoft is also a major U.S. government contractor and a key partner to the U.S. Department of War ("DoW"),[1] providing American military forces with critical cloud computing, AI, and other technology. Microsoft has long believed in the strong defense of the United States and wants the people who defend it to have access to the Nation's best technology, including from Microsoft.

To continue cultivating cutting-edge solutions—and consistent with its commitment to trust and intelligence—Microsoft has established a close business relationship with Anthropic PBC ("Anthropic"), including by integrating Anthropic's products, services, and technologies into the products and services that Microsoft makes available to DoW and other customers. As an Anthropic partner, Microsoft is directly impacted by DoW's designation that Anthropic presents a supply chain risk to national security pursuant to 10 U.S.C. § 3252 (the "Determination").

---

[1] This submission refers to DoW, the issuing agency for the Determination at issue and the secondary name for the U.S. Department of Defense.

BRIEF OF AMICUS CURIAE MICROSOFT CORPORATION ISO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-01996-RFL

## INTRODUCTION AND SUMMARY OF ARGUMENT

On February 27, 2026, federal agencies were directed to halt the use of Anthropic technology at the conclusion of a "Six Month phase out period" for all agencies that are "using Anthropic's products, at various levels." *See* Compl., Ex. 1, at 1; *see also id.*, Ex. 2, at 1 (Secretary of War writing that Anthropic will continue to provide its services to DoW "for a period of no more than six months to allow for a seamless transition . . . ."). But when it subsequently issued its Determination with impact on Anthropic's partners, DoW made this designation effective immediately. *See id.*, Ex. 3, at 2.

As an Anthropic partner, Microsoft believes the Court should temporarily enjoin implementation of the Determination for all existing contracts and their ongoing use of Anthropic products, including with and through Microsoft products. The President and Secretary Hegseth have already recognized the value of a pause here. *See id.*, Ex. 1, at 1; *id.*, Ex. 2, at 1. Microsoft and other industry partners would benefit from the same while the Court considers Anthropic's challenge. This pause will balance the equities and serve the public interest in three critical respects.

First, a temporary restraining order will enable a more orderly transition and avoid disrupting the American military's ongoing use of advanced AI. Otherwise, Microsoft and other technology companies must act immediately to alter existing product and contract configurations used by DoW. This could potentially hamper U.S. warfighters at a critical point in time.

Second, a temporary restraining order will avoid the immediate implementation of an unprecedented order—arising from a contract dispute between two parties—that will have broad negative ramifications for the entire technology sector and American business community.

Third, and most importantly, a temporary restraining order will permit the parties to pursue a negotiated resolution that will better serve all involved and avoid wide-ranging negative

business impacts. Microsoft supports DoW's critical need to conduct military operations with reliable access to the country's best technology. Public statements suggest that Anthropic and the technology sector at large share this objective. Microsoft's position is that AI should be focused on lawful and appropriately guarded use cases. For example, AI should not be used to conduct domestic mass surveillance or put the country in a position where autonomous machines could independently start a war. Microsoft believes the government itself appreciates and respects this position.

In sum, the current disagreement arises despite substantial common ground between the government and Anthropic. These essential interests are also shared by Microsoft and, it believes, the technology industry and business community as a whole. Ultimately, the parties, the other technology companies supporting DoW, and the country need to pursue an outcome that will win the confidence of the U.S. military, AI developers, and the American public. This outcome can only be achieved if the parties and the technology sector engage in reasoned discussion, which a temporary restraining order would permit.

## ARGUMENT

### I. A Temporary Restraining Order Would Serve the Public Interest

The adverse impacts of the Determination on the American technology sector and the public are relevant to both this Court's balancing of the equities and consideration of the public interest. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1202 (9th Cir. 2022) (quoting *Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 931-932 (9th Cir. 2003)). As discussed below, entering a temporary restraining order would balance the equities and serve the public interest because it would avoid imposing broad and unpredictable risks on Microsoft and other government contractors in favor of a more orderly process that allows for a negotiated resolution or an appropriate transition that meets the needs of American warfighters. *See id.*

-3-

BRIEF OF AMICUS CURIAE MICROSOFT CORPORATION ISO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-01996-RFL

CROWELL & MORING LLP
ATTORNEYS AT LAW

### A. Immediate Implementation of the Determination Imposes Significant Costs and Risks on Government Contractors

By setting a six-month period for DoW itself to transition services away from Anthropic, DoW recognized that, even if the Determination stands, an orderly transition takes time. But the Determination does not provide the same transition period for contractors that may use Anthropic products or services to perform under DoW contracts. Immediate implementation of the Determination imposes substantial and wide-ranging costs and risks on Microsoft and other U.S. government contractors that partner with Anthropic and rely on Anthropic's technology as a foundational layer of their own products and services, which they provide to the U.S. military.

The Determination immediately requires DoW to modify existing contracts to remove "covered item[s] of supply" and "covered system[s]." *See* Compl. Ex. 3, at 1 (citing 48 C.F.R. § 239.7301-7302). Because those statutory terms sweep broadly, the Determination could be interpreted to ban the procurement of products and services that merely use or make available Anthropic's products, thus imposing immediate financial harms on Microsoft and other similarly situated industry partners. *See* 44 U.S.C. § 3552(b)(6)(A) (a "covered system" includes a "national security system" that is an "information system . . . used or operated by an agency or a contractor" to support intelligence activities, cryptologic activities related to national security, command and control of military forces, weapon system components, or that are critical to fulfillment of military or intelligence missions); 40 U.S.C. § 11101(6)(A) (a "covered item of supply" includes "information technology" products or services "used by a contractor under a contract with the executive agency" and included in a covered system).

If the Determination takes effect immediately, Microsoft and other government suppliers will be compelled to expend significant resources assessing the contractual impacts of excluding Anthropic and Anthropic products. As such, industry-leading technology companies that have

-4-

BRIEF OF AMICUS CURIAE MICROSOFT CORPORATION ISO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-01996-RFL

CROWELL & MORING LLP
ATTORNEYS AT LAW

collaborated with Anthropic to build cutting-edge commercial offerings may not be able to provide them, as built, to support America's warfighters. In fact, the Determination has the potential to delay all ongoing DoW contracting for IT products and services incorporated in covered systems because contractors will have to review their offerings under DoW contracts to identify the Anthropic product(s) that would be, or are, provided to DoW or used to perform covered DoW contracts. *See* 48 C.F.R. § 252.239-7018.

Government suppliers will also have to expend substantial effort removing Anthropic and Anthropic products from their offerings to DoW in cases where alternatives are unavailable or Anthropic products are embedded. The costs for these actions—including reengineering, re-procurement, and associated legal and administrative costs—will be incurred immediately as suppliers will have to invest time, energy, personnel, and money into modifying and rebuilding offerings that incorporate Anthropic's products and confirming the new versions of those offerings meet the contractual requirements. Given the uniqueness of Anthropic's products, suppliers may need to request a contract modification to deliver on their contractual commitments to DoW without the use of Anthropic products, or a statutory waiver where alternatives to Anthropic are not viable. In short, a temporary restraining order will preserve the *status quo* for the benefit of both the American military and the tech-supplier ecosystem.

**B.    The Determination is a Broad Remedy that Will have Unintended Consequences for Government Contractors and American Business**

The use of a supply chain risk designation to address a contract dispute may bring severe economic effects that are not in the public interest. *See Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2013) (considering economic harm as part of the public interest consideration). The Determination has, without explaining the basis, labeled Anthropic a "supply chain risk" against whom extraordinary measures are needed "to protect national security." Only one such

CROWELL & MORING LLP
ATTORNEYS AT LAW

BRIEF OF AMICUS CURIAE MICROSOFT CORPORATION ISO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-01996-RFL

supply chain risk determination, under related authorities in 41 U.S.C. § 1323, has been issued publicly against a foreign company posing widely acknowledged security concerns.[2]  The authority for the Determination itself permits this action only against an adversary that poses an articulated threat to the United States.  *See* 10 U.S.C. § 3252(d)(4) (defining "supply chain risk" as the risk that an "adversary" may, *inter alia*, "sabotage" a covered system "to surveil, deny, disrupt, or otherwise degrade" it).  This drastic action has never been taken publicly against an American company.

Should this action proceed without the entry of a temporary restraining order, Microsoft and other government contractors with expertise in developing solutions to support U.S. government missions will be forced to account for a new risk in their business planning.  The technology sector powers innovation through interconnectedness, tying together services, products, and infrastructure to tackle tomorrow's challenges.  If a single piece of that interconnected offering (long accepted and supported by the government) can be disrupted by a supply chain risk determination, companies will change the way they approach their commercial and public sector relationships in future.  Continued partnership with Anthropic—even where permissible under the Determination—would pose new risks and attendant costs affecting public sector and commercial operations, given that Anthropic has been labeled a threat to national security.  Coupled with the risk that the U.S. government may seek to ban commercial dealings with Anthropic in the future, as the Secretary of War stated publicly on February 27, 2026, that it would, the Determination creates significant risks for commercial collaboration.

Further, the Determination, as issued, forces government contractors to comply with vague and ill-defined directions that have never before been publicly wielded against a U.S.

---

[2] *See Acronis AG FASCSA Exclusion Order*, Off. Dir. Nat'l Intel. (July 11, 2025), https://sam.gov/exclusion/189befb2-b60a-4f2a-b519-2fdaedcf4577/view.

-6-

BRIEF OF AMICUS CURIAE MICROSOFT
CORPORATION ISO PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-01996-RFL

CROWELL
& MORING LLP
ATTORNEYS AT LAW

company.[3]  Contractors must shoulder the risk of adapting to unclear and differing interpretations of the Determination.  Many open questions remain, including whether Microsoft and other suppliers can use Anthropic's products for purposes incidental to their DoW contracts, and whether and how other agencies will interpret this and another related DoW determination.[4]  DoW suppliers must also bear the related risk that supply chain risk determinations may be used as an expansive tool in response to contract disputes.  Should companies choose to forego the opportunity to work with the U.S. government due to the attendant risks, the U.S. government, its missions, and the people it serves would lose access to state-of-the-art technological solutions.

The authority for imposing the Determination, 10 U.S.C. § 3252, reflects the seismic impact of supply chain risk determinations and, therefore, sets forth procedural requirements that dictate a considered decision-making process before, in this case, altering longstanding government contracts.  The temporary restraining order sought here would maintain the *status quo* while the Court considers whether those requirements should be observed.  That additional time may also allow space for DoW to clarify its expectations—to the benefit of both contractors and their government partners—before imposing substantial costs on industry and the innovation ecosystem that benefits DoW, the broader government market, and American society.

### C.  A Temporary Restraining Order Will Permit Exploration of a Negotiated Resolution

The harms articulated above may be avoided through a negotiated resolution, which weighs in favor of the public interest.  There is reason to believe a negotiated resolution is

---

[3] *See, e.g.*, Oma Seddiq, *Pentagon's Anthropic Risk Decision Spurs Lawmaker Confusion,* Bloomberg Gov't (Mar. 5, 2026), https://news.bgov.com/bloomberg-government-news/pentagons-anthropic-risk-decision-spurs-confusion-in-congress; *Enhanced Title 10 United States Code (U.S.C.) Section 3252 Procedures for Supply Chain Risk Management in Support of Department of Defense Trusted Systems and Networks*, Off. Sec'y Def. (Dec. 28, 2018), https://www.acq.osd.mil/asda/dpc/cp/cyber/docs/section-3252/3252_FAQs.docx.
[4] *See GSA Federal Acquisition Service Proposed Government AI System Terms and Conditions*, Gen. Serv. Admin., https://buy.gsa.gov/interact/system/files/GSA_Federal_Acquisition%20Service%20Proposed%20Government%20AI%20System%20Terms%20and%20Conditions.pdf (draft GSA regulation to implement AI systems requirements).

-7-

BRIEF OF AMICUS CURIAE MICROSOFT CORPORATION ISO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-01996-RFL

CROWELL & MORING LLP
ATTORNEYS AT LAW

possible here. Anthropic and DoW appear to agree on core issues. Recently, other companies have negotiated with DoW on new terms to address these issues.[5] Should the contractual process fail to resolve the disagreement, the government can avail itself of any number of established procedures, consistent with the law, without causing such irreparable harm to the technology industry ecosystem. Maintaining the *status quo* while this Court considers the issues raised would simultaneously allow one or more of these alternative pathways to non-judicial resolution to be realized. That, too, would be in the public's interest while serving the judicial economy.

Microsoft supports DoW's vital interest in maintaining ongoing access to the most advanced and innovative technology American companies can offer. Microsoft also believes that American AI should not be used to conduct domestic mass surveillance or start a war without human control. This position is consistent with the law and broadly supported by American society, as the government acknowledges. Ultimately, the parties, the other technology companies supporting DoW, and the country should pursue a collective path that secures the support of the U.S. military, AI developers, and the American public. Reasoned discussion can lead to the resolution of this issue, which a temporary restraining order enjoining the Determination would permit.

## CONCLUSION

As the Administration has recognized, the United States is in a "race to achieve global dominance" in artificial intelligence and "[w]hoever has the largest AI ecosystem will set global AI standards and reap broad economic and military benefits."[6] Today, the United States has the most advanced AI industry, and its major companies deliver groundbreaking technology to

---

[5] *See Our agreement with the Department of War*, OpenAI (Mar. 2, 2026), https://openai.com/index/our-agreement-with-the-department-of-war/.
[6] *See America's AI Action Plan*, The White House (July 2025), https://www.whitehouse.gov/wp-content/uploads/2025/07/Americas-AI-Action-Plan.pdf at 1.

-8-

BRIEF OF AMICUS CURIAE MICROSOFT
CORPORATION ISO PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-01996-RFL

CROWELL
& MORING LLP
ATTORNEYS AT LAW

support the Nation's needs through government contracts.  This is not the time to put at risk the very AI ecosystem that the Administration has helped to champion.  To mitigate the risks outlined above and allow time for a more orderly resolution of the contract dispute between Anthropic and DoW, Microsoft respectfully requests that this Court grant Plaintiff's motion for a temporary restraining order.

Dated:  March 13, 2026                                      CROWELL & MORING LLP

By:  /s/ Warrington S. Parker III
Warrington S. Parker III
  WParker@crowell.com
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone:  415.986.2800
Facsimile:  415.986.2827

CROWELL & MORING LLP
Sharmistha Das (pro hac vice)
  SDas@crowell.com
Matthew F. Ferraro (SBN 296622)
  MFerraro@crowell.com
Alexandra Barbee-Garrett (pro hac vice forthcoming)
  ABarbee-Garrett@crowell.com
Stephanie Crawford (pro hac vice forthcoming)
  SCrawford@crowell.com

1001 Pennsylvania Avenue NW
Washington, DC 20004
Telephone:  202.624.2500
Facsimile:  202.628.5116

Attorneys for Amicus Curiae
MICROSOFT CORPORATION

CROWELL & MORING LLP
ATTORNEYS AT LAW

-9-

BRIEF OF AMICUS CURIAE MICROSOFT CORPORATION ISO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-01996-RFL