HANSON BRIDGETT LLP
Matthew F. Miller, SBN 172661
mmiller@hansonbridgett.com
Arezoo Jamshidi, SBN 284220
ajamshidi@hansonbridgett.com
Patrick Burns, SBN 300219
pburns@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:	(415) 777-3200
Facsimile:	(415) 541-9366

Attorneys for *Amici Curiae*
Catholic Moral Theologians and Ethicists

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ANTHROPIC PBC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>U.S. DEPARTMENT OF WAR, et al.,<br><br>　　　　Defendants. | Case No. 3:26-cv-01996-RFL<br><br>**BRIEF OF AMICI CURIAE CATHOLIC MORAL THEOLOGIANS AND ETHICISTS IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, OR SECTION 705 STAY** |

I.	**INTRODUCTION AND INTEREST OF AMICI CURIAE**

Amici curiae, Charles Camosy, Joseph Vukov, Brian Patrick Green, Brian J.A. Boyd, Thomas Berg, Dana Dillon, Michael Baggot, Jana Bennett, Christine Hinze, Jason Eberl, William Cavanaugh, Julie Hanlon Rubio, Mia Morrow and Patrick Clark (the "Catholic Moral Theologians and Ethicists"), are scholars of Catholic moral theology, philosophy, and social thought who have written extensively on questions of human dignity, moral responsibility, and the ethical limits of technology.[1] They submit this brief to offer the Court a perspective grounded in a longstanding moral tradition that bears directly on the issues raised by this case, while remaining attentive to the

---

[1] The views expressed in this brief are solely those of the amici curiae. The Catholic Moral Theologians and Ethicists submit this brief in their individual capacities and do not purport to represent or speak for the broader Catholic Church.

factual record and the technical realities of modern artificial intelligence.[2]

The Catholic Moral Theologians and Ethicists are professors at Catholic universities across the country. There are four scholars who authored the substance of the discussion in Section II of this brief:[3]

- Charles Camosy is an Associate Professor of Moral Theology at the Catholic University of America and founding editor of *The Magenta Series* for New City Press. He is the author of ten books, many of which are focused on visions of morality which cross difficult moral, ideological, political, and theological differences. In addition to publishing academic work, Camosy's public-facing articles have appeared, among other places, in the New York Times, the Washington Post, the Atlantic, the New York Post, and First Things. He currently serves as peritus (theological expert) for His Eminence, Timothy Cardinal Dolan and as senior lead for a working group on "Transhumanism and the Body" sponsored by USC's Institute for Advanced Catholic Studies.

- Joseph Vukov is an Associate Professor of Philosophy and the Associate Director of the Hank Center for the Catholic Intellectual Heritage at Loyola University Chicago. He is the author of several books, including, most recently, Staying Human in an Era of Artificial Intelligence. Vukov serves on the AI Research Group for the Dicastery for Culture and Education.

- Brian J.A. Boyd earned a Ph.D. in Moral Theology from the University of Notre Dame, where he studied how institutional arrangements and social structures influence personal character. He is an affiliated scholar at the Institute for Advanced Catholic Studies at USC and has taught at Notre Dame Seminary and Loyola University New Orleans, where he served as Director of the Center for Ethics and Economic Justice. He is also a frequent commentator and author on the ethics of AI, serving as a consultant to the journal The New Atlantis and as lead author for the American Enterprise Institute's AI Ethics Council.

---

[2] The Catholic Moral Theologians and Ethicists certify that no person or entity other than the Catholic Moral Theologians and Ethicists and their counsel authored or made any monetary contribution intended to fund the preparation or submission of this brief.

[3] For the sake of brevity, this brief only sets forth the biographical information as to the four authors of the statement. For more information on all of the Catholic Moral Theologians and Ethicists, their faculty websites are located at the following links: https://trs.catholic.edu/faculty-and-research/faculty-profiles/charles-camosy/index.html; https://www.scu.edu/ethics/about-the-center/people/brian-green/; https://faculty.providence.edu/en/persons/dana-dillon/; https://www.luc.edu/philosophy/ftfacultyprofileaggregatepage/profiles/josephmvukovphd.shtml; https://www.thenewatlantis.com/authors/brian-boyd; https://www.shu.edu/profiles/mariamorrow.html; https://angelicum.it/teologia/professor/baggot-michael/; https://udayton.edu/directory/artssciences/religiousstudies/bennett_jana.php; https://www.fordham.edu/academics/departments/theology/faculty/christine-firer-hinze/; https://www.slu.edu/arts-and-sciences/bioethics/faculty/eberl-jason.php; https://theology.nd.edu/people/thomas-berg/; https://www.depaul.edu/faculty/william-cavanaugh/; https://www.scranton.edu/directory/profiles/theology-religious-studies/patrick-clark.shtml; https://www.scu.edu/jst/about/faculty/all-jst-faculty-profile-cards/rubio.html.

- Brian Patrick Green is a lecturer in ethics at the Graduate School of Engineering at Santa Clara University. His research includes AI ethics, space ethics, the operationalization of ethics in technology companies, and the ethics of emerging technologies. He is author, co-author, or co-editor of five volumes on technology ethics.

This case arises from a narrow but consequential dispute about whether a developer of advanced AI systems may maintain principled limits on certain uses of its technology—specifically, lethal autonomous weapons and mass surveillance of Americans.

The government sought to deploy Defendant Anthropic PBC's ("Anthropic") AI models for "all lawful purposes" without exception. Anthropic agreed to that request in substantial part, offering to permit all lawful uses subject to only two limited exclusions. As explained by Anthropic's co-founder and Chief Science Officer, Dr. Jared Kaplan, those exclusions reflect the company's technical judgment that current AI systems are not yet sufficiently reliable, interpretable, or controllable to be entrusted with decisions that directly take human life without human oversight, or to conduct population-scale surveillance in environments where errors, bias, or misuse could cause irreversible harm.

Central to Anthropic's approach is what it describes as "Constitutional AI," which reflects the company's effort to train and evaluate advanced AI systems against a set of clearly articulated principles. Under this approach, Anthropic's AI models are designed to avoid harm, respect persons, privacy, and the limits of machine decision-making. As Anthropic explains, this emphasis achieves preeminence in settings where technical safeguards alone cannot fully address the risk and harms of misuse—such as classified environments, large-scale deployments, or systems that operate with a degree of autonomy beyond continuous human supervision. In those contexts, defined normative boundaries are intended to serve as an additional safeguard where direct human oversight is necessarily limited.

The two usage limitations at issue in this case—the exclusion of lethal autonomous weapons and mass surveillance of Americans—flow directly from that framework. They reflect Anthropic's assessment that, at the current stage of AI development, delegating decisions that directly implicate human life or pervasive monitoring to machine systems risks severing moral

responsibility from human judgment in ways that existing legal and technical controls cannot adequately remedy.

It is at this juncture that the Catholic Moral Theologians and Ethicists who submit this brief seek to assist the Court. Long before the advent of artificial intelligence, the Catholic tradition has wrestled with similar underlying concerns related to morality and ethics. That tradition has consistently emphasized that decisions affecting human life, freedom, and dignity must remain the responsibility of human actors, and that not every technically feasible or legally permissible use of a tool is therefore appropriate.

The Catholic Moral Theologians and Ethicists have worked with people of different faiths—and of no faith—on a central matter of shared and longstanding concern: when technology is capable of violating life, dignity, and freedom, it is reasonable to draw clear boundaries around its use. Those boundaries reflect caution, not defiance, and responsibility rather than obstruction.

## II.    AMICI CURIAE'S POSITION

The Catholic Moral Theologians and Ethicists submit the following views to explain why they believe the Church's moral traditions bear directly on the specific questions presented by Anthropic's refusal to permit certain uses of its AI technology:

**Catholic Moral Theologians and Ethicists' Position**

1. Catholic Moral Theologians and Ethicists support this brief not because of any general partiality to Anthropic as a company nor because of the broader goals of AI development it shares with other companies. Indeed, many of them have different views about the goods that are achievable by AI, and the direction of AI development that Anthropic—together with many other companies—shares. Rather, the Catholic Moral Theologians and Ethicists affix their names as Catholic moral theologians and ethicists because they believe the Church's moral vision offers support for Anthropic's particular stand against the Department of War on the matters of (1) mass domestic surveillance and (2) the creation and use of AI-enabled autonomous weapons. In these matters, the Catholic Moral Theologians and Ethicists applaud Anthropic for its principled ethical stance on AI use by the Department.

///

**On Mass Domestic Surveillance**

2.     The Catholic Moral Theologians and Ethicists are aligned with Anthropic's insistence that AI ought not be used for mass domestic surveillance. This stance is based on several Catholic teachings, including Catholic teachings about privacy. Catholic teaching on the appropriate level of privacy for personal communications is related to its understanding of communication more generally.[4] The Catechism of the Catholic Church asserts: "No one is bound to reveal the truth to someone who does not have the right to know it." In 2023, Pope Francis likewise insisted that the world needs an international treaty to regulate AI, especially with the rise of what he called "a surveillance society."[5]

3.     This understanding of privacy grows from the Church's teaching about the dignity of the human person, a core teaching of the Church's social doctrine, and one the Catholic Church shares with many other theological and philosophical traditions. Human dignity grounds individual human rights and is also inherently relational. It thus preserves human relationships as a sacred space, and guards communications within those relationships. Personal communication, in short, finds its ultimate end in the good of human relationships, which are in turn grounded in the dignity of the human person. For the government (and especially the military) to intrude in this space, and use private communications for some other end, undermines the good of human relationships and ultimately, the dignity of persons involved in those relationships. It is a totalitarian government which treats humans as mere objects, and human relationships as mere sources of data – moves that are characteristic of "the technocratic paradigm" warned against in Catholic thought.

4.     Privacy is not an absolute right in Catholic teaching nor in the more general theological and philosophical frameworks the Catholic Moral Theologians and Ethicists endorse.

---

[4] *Catechism of the Catholic Church* ¶¶ 2464–2513, VATICAN, https://www.vatican.va/content/catechism/en/part_three/section_two/chapter_two/article_8/iv_respect_for_the_truth.html (last visited Mar. 13, 2026).

[5] *Pope Francis Warns of "Technological Dictatorship" From Artificial Intelligence*, CNN, https://www.cnn.com/2023/12/14/tech/pope-francis-ai-warning-technological-dictatorship (Dec. 14, 2023).

Yet mass surveillance by the Department of War clearly oversteps privacy as described in Catholic thought, and would, more generally, amount to a clear violation of human dignity.

5. In addition to concerns about privacy, the Catholic principle of subsidiarity (Pius XI, Quadragesimo Anno)[6] also opposes the idea of specifically mass surveillance. Subsidiarity supports the idea that decisions and oversight should be handled by the smallest, most local competent body—families, communities, cities, regions, states—those closest to the people affected. Mass surveillance concentrates the power to monitor and judge individuals in the hands of a remote central authority. This shift of power, from the local to the central, harms human agency—including that of law enforcement and others closest to the communities where people live. This shift risks disempowering individuals, who are in danger of being caught up in AI-driven kafkaesque bureaucracy which knows nothing of their concrete daily existence. It also undermines state and local governments, which are not only more likely to understand context better than a distant AI, but which must also live with the effects of these actions. Additionally, centralized surveillance can act as a steppingstone towards totalitarianism, which the Church absolutely opposes due to its threats to human dignity.

6. For the reasons articulated in paragraphs (2-5), the Catholic Moral Theologians and Ethicists therefore stand alongside Anthropic in its opposition to the use of AI to carry out such mass surveillance.

**On Lethal Autonomous Weapons Systems:**

7. The Catholic Moral Theologians and Ethicists also support Anthropic's stance against the use of AI by the federal government in lethal autonomous weapons systems that select and engage targets without meaningful human oversight. They are particularly disturbed by the Department of War's apparent insistence on the freedom to use Claude and other AI tools to direct autonomous weapons. Use of AI-directed autonomous weapons by definition fails to meet the conditions for *jus in bello* required for acts of war to be morally licit in Catholic thought. For any

---

[6] *Pope Pius XI, Quadragesimo Anno* (May 15, 1931), VATICAN, https://www.vatican.va/content/pius-xi/en/encyclicals/documents/hf_p-xi_enc_19310515_quadragesimo-anno.html.

violent act to be justified under the conditions of a just war, for example, a particular judgment by a human must be made about whether the force being deployed is proportionate with the legitimate military goals to be achieved. A particular human judgment must likewise be made about noncombatant immunity. Human involvement is crucial because judgments of proportionality and discrimination are prudential—not mere pattern matching. Human judgment, then, is built into the conditions of a just war, eliminating the possibility that the deployment of lethal autonomous weapons could ever meet the conditions of *jus in bello*. This is one reason why, since at least 2013, the Vatican has consistently and strongly spoken out against autonomous weapons.[7] More recently, the Catholic Moral Theologians and Ethicists note that the Holy See has taken an even stronger stance, insisting on a global moratorium on autonomous weapons.[8] The United States Bishops have also taught it to be essential that human beings have control over "any weapon system."[9]

8. In addition to specific Catholic teaching about the conditions for *jus in bello*, other reasons buttress the Catholic Moral Theologians and Ethicists stand against lethal autonomous weapons, grounded in broader ethical considerations that go beyond distinctively Catholic thought. Lethal autonomous weapons problematically obscure human agency, dangerously shifting responsibility away from human decision-makers to machines. They accelerate the already rapid military decision-making processes, perhaps to the point of eliminating even the possibility of human involvement. They circumvent the kind of practical judgment and careful decision-making that should inform all human decisions, and especially those that involve matters of life

---

[7] *Holy See Statement on Lethal Autonomous Weapons and Drones* (Nov. 14, 2013), U.S. CONF. OF CATH. BISHOPS, https://www.usccb.org/resources/holy-see-statement-lethal-autonomous-weapons-and-drones-november-14-2013.

[8] *Holy See Renews Call for Moratorium on AI Weapons Development*, CRUX, https://cruxnow.com/vatican/2026/02/holy-see-renews-call-for-moratorium-on-ai-weapons-development (Feb. 2026).

[9] *Artificial Intelligence: Principles and Priorities* (June 9, 2025), U.S. CONF. OF CATH. BISHOPS, https://www.usccb.org/resources/AI%20Principles%20and%20Priorities%20Ltr%206%209%202025.pdf.

and death. The Catholic Moral Theologians and Ethicists could go on—there are myriad objections to lethal autonomous weapons. As Catholic moral theologians and ethicists, they take the reasons articulated in paragraph (7) to be authoritative. Yet they also find the objections articulated in this paragraph, while not as authoritative and certainly not exhaustive, to be important considerations as well.

9. The Catholic Church thus stands against autonomous weapons on principle (see paragraphs 7 and 8). In this way, the Catholic Moral Theologians and Ethicists' stance on lethal autonomous weapons is more strident than Anthropic's, which is based on its understanding of the current limitations of the technology. They nevertheless agree with Anthropic that (setting aside any disagreements about the permissibility of pursuing lethal autonomous weapons in principle) the present state of the technology makes it highly imprudent to use for autonomous targeting in current conflicts. In the present moment, its CEO, Dario Amodei, assesses that "frontier AI systems are simply not reliable enough to power fully autonomous weapons."[10] An illustrative contrast can be seen in Waymo's standard of "demonstrably safe AI" for its self-driving cars.[11] Waymo defines reasonable risk in reference to the inherent unpredictability of circumstances, rather than the statistical unpredictability of generative AI systems: reasonable risk comes from the activity itself rather than the malfunctioning device.[12] Waymo expects its self-driving cars to be at least ten times safer than human drivers. To be clear, for reasons already articulated, the Catholic Moral Theologians and Ethicists stand against lethal autonomous weapons in principle, and so are not open to their use even if shown to be perfectly reliable. Yet they mention the issue of reliability to indicate their sympathy with Anthropic on this point.

///

///

---

[10] *Statement on the Department of War*, ANTHROPIC, https://www.anthropic.com/news/statement-department-of-war (last visited Mar. 13, 2026).

[11] *Demonstrably Safe AI for Autonomous Driving*, WAYMO, https://waymo.com/blog/2025/12/demonstrably-safe-ai-for-autonomous-driving/ (Dec. 2025).

[12] *Safety Research*, WAYMO, https://waymo.com/safety/research/ (last visited Mar. 13, 2026).

## III. CONCLUSION

In his encyclical *Spe Salvi*, Pope Benedict XVI warned that "progress, seen accurately, is progress from the sling to the atom bomb. [...] Without doubt, it offers new possibilities for good, but it also opens up appalling possibilities for evil—possibilities that formerly did not exist. We have all witnessed the way in which progress, in the wrong hands, can become and has indeed become a terrifying progress in evil. If technical progress is not matched by corresponding progress in man's ethical formation, in man's inner growth (cf. Eph 3:16; 2 Cor 4:16), then it is not progress at all, but a threat for man and for the world."[13]

Anthropic, in the red lines it has drawn for the use of its products on domestic mass surveillance and autonomous weapons systems, sought to uphold minimal standards of ethical conduct for technical progress. In doing so, Anthropic was acting as a responsible and moral corporate citizen, not as a threat to the safety of the American supply chain.

DATED: March 13, 2026                    HANSON BRIDGETT LLP

By:      /s/ *Matthew F. Miller*
         Matthew F. Miller
         Arezoo Jamshidi
         Patrick Burns

         Attorneys for *Amici Curiae*
         Catholic Moral Theologians and Ethicists

---

[13] *Pope Benedict XVI, Spe Salvi* (Nov. 30, 2007), VATICAN, https://www.vatican.va/content/benedict-xvi/en/encyclicals/documents/hf_ben-xvi_enc_20071130_spe-salvi.html.