MICHAEL J. MONGAN (SBN 250374)
michael.mongan@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1000

EMILY BARNET (*pro hac vice*)
emily.barnet@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich St
New York, NY 10007
Telephone: (212) 230-8800

*Attorneys for Plaintiff Anthropic PBC*

KELLY P. DUNBAR (*pro hac vice*)
kelly.dunbar@wilmerhale.com
JOSHUA A. GELTZER (*pro hac vice*)
joshua.geltzer@wilmerhale.com
KEVIN M. LAMB (*pro hac vice*)
kevin.lamb@wilmerhale.com
SUSAN HENNESSEY (*pro hac vice*)
susan.hennessey@wilmerhale.com
LAUREN MOXLEY BEATTY (SBN 308333)
lauren.beatty@wilmerhale.com
LAURA E. POWELL (*pro hac vice*)
laura.powell@wilmerhale.com
SONIKA R. DATA (*pro hac vice*)
sonika.data@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHROPIC PBC,<br><br>    Plaintiff,<br><br>  v.<br><br>U.S. DEPARTMENT OF WAR, et al.,<br><br>    Defendants. | Case No. 3:26-cv-1996<br><br>**SECOND DECLARATION OF SARAH HECK IN SUPPORT OF PLAINTIFF ANTHROPIC PBC'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Rita F. Lin |

I, Sarah Heck, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I previously submitted a declaration in this case on March 9, 2026, describing Anthropic PBC's ("Anthropic") relationship and communications with the U.S. Government, including the Department of War ("Department"). I submit this supplemental declaration in support of Anthropic's Reply Brief in Support of Plaintiff's Motion for a Preliminary Injunction.

2. As stated in my March 9 declaration, my understanding of Anthropic's relationship and communications with the Department is based on my experience in my role as Head of Policy. In that role, I lead Anthropic's public policy engagement, government relationships, strategic partnerships, and government communications, including engagements and initiatives that address the intersection of Artificial Intelligence ("AI"), national security, and economic policy. This includes being involved in communications between Anthropic and the government.

3. I have personal knowledge of the contents of this declaration, or have knowledge of the matters based on my review of information and records gathered by Anthropic personnel, and could testify thereto.

4. As I described in my original declaration, Anthropic and the Department had been negotiating a partnership for several months. I participated personally in these negotiations. This includes attending the in-person meeting on February 24, 2026, where the Department Chief Technology Officer and Under Secretary of War Emil Michael and Secretary of War Pete Hegseth met with Anthropic CEO Dr. Dario Amodei.

5. I explained in my prior declaration that Anthropic's negotiations with the Department did not end after the February 27, 2026, directives issued by President Donald Trump and Secretary Hegseth attacking Anthropic. In the days following those directives, the parties continued to work towards an agreement, even as the Department—unbeknownst to Anthropic— was drafting materials claiming that Anthropic posed risks of sabotage, data exfiltration, and other serious harms. At no point in these conversations did Under Secretary Michael or anyone at Department share with Anthropic its apparently grave concerns or suggest that they were an impediment to a deal. To the contrary, the Department and Anthropic were still engaged in

negotiations on March 4, 2026—the day *after* the Department completed its formalization of the supply-chain risk designation (but before Anthropic received that formal notice).[1]

6.      In reviewing the materials the government has filed in this case, I was struck by its repeated claim that Anthropic insisted during negotiations that the company have some sort of approval role in the Department's operational decision chain. That is false. At no time during Anthropic's negotiations with the Department did I or any other Anthropic employee state that the company wanted that kind of role. We do not want it now, either.

7.      Likewise, at no point during the negotiations did any party raise any concerns about Anthropic taking technical steps to disrupt the U.S. military.  This is a new purported concern that was raised, for the first time, in the government's filings in this case. Had this concern been raised in a manner allowing Anthropic to respond, we would have explained, among other things, the technical impossibility of such disruption. Second Declaration of Thiyagu Ramasamy ("Second Ramasamy Decl.") ¶¶ 13-20. As I understand from Thiyagu Ramasamy's supplemental declaration, Anthropic is unable to alter an AI model after deployment without the Department's knowledge or consent. Second Ramasamy Decl. ¶ 17.

8.      Additionally, it is my understanding that the Department had previously expressed concerns that Anthropic had objected—after the fact—about how Anthropic's models were being used in the Department operations and those concerns are now reprised in the government's materials. But this concern was and is misplaced, as Anthropic has made very clear. Indeed, when Secretary Hegseth raised this topic at the February 24th in-person meeting, Dr. Amodei clarified that the company had not objected to the use of its tools as reported. Dr. Amodei further explained that Anthropic has no interest in interfering with the Department operations more generally. Dr. Amodei publicly reiterated that stance in a February 26, 2026, blog post, explaining that Anthropic "understands that the Department of War, not private companies, makes military

---

[1] Attached hereto as **Exhibit 1** is a true and correct copy of a March 4, 2026 email from Emil Michael to Dario Amodei.

decisions" and underscoring that Anthropic has "never raised objections to particular military operations nor attempted to limit use of our technology in an ad hoc manner."[2]

9.    In an effort to be responsive to the Department's apparent concerns that Anthropic desired an approval role in operations, Anthropic was willing to make contractual commitments as further reassurance. In a draft agreement transmitted to the Department on March 4, 2026, Anthropic included language stating: "For the avoidance of doubt, [Anthropic] understands that this license does not grant or confer any right to control or veto lawful Department of War operational decision-making." Anthropic included this language to clarify that it did not seek to be, and would not be, part of any operational decision chain.[3]

10.    I was also surprised to read in the government's materials that Anthropic's beliefs that Claude should not be used for autonomous lethal warfare or mass surveillance of Americans are part of what makes the company a danger to national security. I find this rationale puzzling for two reasons: (1) when negotiations broke down, the parties were very near agreement on language that would address Anthropic's concerns regarding autonomous lethal warfare and (2) Secretary Hegseth himself referred to Anthropic's concerns regarding autonomous lethal warfare and mass surveillance of Americans as "understandable." That was echoed mere days later by the Commander of U.S. Central Command, who told a media outlet, "Humans will always make final decisions on what to shoot and what not to shoot." And a recent threat assessment from the Office of the Director of National Intelligence, reflecting the collective views of the U.S. Intelligence Community, further confirms that at least some portions of the Administration believe "it is essential to make sure that humans maintain control of the [AI models] and how AI is used." Indeed, on March 4, 2026 — after the Secretarial Letters were drafted, Under Secretary Michael emailed Dr. Amodei to say "I think we are very close here" regarding these two issues.[4]

I declare under penalty of perjury that the foregoing is true and correct.

---

[2] *See Statement from Dario Amodei on Our Discussions with the Department of War*, Anthropic (Feb. 26, 2026), https://www.anthropic.com/news/statement-department-of-war.
[3] Attached hereto as **Exhibit 2** is a true and correct copy of a March 4, 2026 email and two attachments from Anthony Fuscellaro to Dario Amodei Re: Official Correspondence from the Department of War to Anthropic.
[4] *See* Ex. 1.

Executed on March 20, 2026.          /s/ *Sarah Heck*
                                     Sarah Heck

**<u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(I)(3)</u>**

Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories.

By:     /s/ *Michael J. Mongan*
Michael J. Mongan