MICHAEL J. MONGAN (SBN 250374)
michael.mongan@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1000

EMILY BARNET (*pro hac vice*)
emily.barnet@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich St
New York, NY 10007
Telephone: (212) 230-8800

*Attorneys for Plaintiff Anthropic PBC*

KELLY P. DUNBAR (*pro hac vice*)
kelly.dunbar@wilmerhale.com
JOSHUA A. GELTZER (*pro hac vice*)
joshua.geltzer@wilmerhale.com
KEVIN M. LAMB (*pro hac vice*)
kevin.lamb@wilmerhale.com
SUSAN HENNESSEY (*pro hac vice*)
susan.hennessey@wilmerhale.com
LAUREN MOXLEY BEATTY (SBN 308333)
lauren.beatty@wilmerhale.com
MATTHEW E. MORRIS (*pro hac vice*)
matt.morris@wilmerhale.com
BARDIA VASEGHI (*pro hac vice*)
bardia.vaseghi@wilmerhale.com
DAKOTA C. FOSTER (*pro hac vice*)
dakota.foster@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

ANTHROPIC PBC,

     Plaintiff,

  v.

U.S. DEPARTMENT OF WAR, et al.,

     Defendants.

Case No. 3:26-cv-01996-RFL

**NOTICE OF MOTION AND MOTION TO COMPLETE THE ADMINISTRATIVE RECORD AND TO CONSIDER EVIDENCE OUTSIDE THE ADMINISTRATIVE RECORD**

Judge: Hon. Rita F. Lin

Hearing Date: July 30, 2026
Time: 10:00 a.m. PT

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 30, 2026, at 10:00 a.m. PT, this motion will be heard before the Honorable Rita F. Lin. Anthropic PBC will, and hereby does, move this Court to complete the Department of War's administrative record and to consider evidence outside that administrative record in evaluating Anthropic's Administrative Procedure Act claim. This motion is based on the accompanying Memorandum of Points and Authorities, the exhibits filed contemporaneously, and such other matters as may be presented to the Court. The parties jointly propose that this motion be briefed and heard on the same schedule as Anthropic's motion for summary judgment: Defendants' opposition due June 24, 2026; Anthropic's reply due July 8, 2026; and a hearing on July 30, 2026.

## REQUESTED RELIEF

Anthropic respectfully requests that the Court consider, in connection with the Administrative Procedure Act claim, certain materials that are already part of the summary judgment record for Anthropic's constitutional claims but that Defendants did not include in the proffered administrative record for the Department of War. Specifically, Anthropic asks the Court (i) to order Defendants to include a March 4 email from Under Secretary Emil Michael to Anthropic's CEO in the administrative record for the Department of War (the "Michael Email"), Dkt. 166-6 (Heck Decl. Ex. 1); and (ii) to consider the June 10, 2026 Declaration of Thiyagu Ramasamy ("the Ramasamy Declaration"), Dkt. 166-4, as evidence outside the administrative record that may, in these circumstances, be considered in evaluating Anthropic's APA claim.

The parties conferred regarding this motion. Defendants agreed to add to the Department of War's administrative record the February 27, 2026 Directives issued by President Trump and Secretary Hegseth, both of which Defendants had originally excluded. But Defendants declined to include the March 4 email and the Ramasamy Declaration. This motion thus concerns only those two documents.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION AND BACKGROUND

Although Anthropic should prevail even without the relief requested in this motion, the circumstances here warrant granting the motion and considering these additional materials in evaluating Anthropic's APA claim.

On February 27, 2026, the Secretary of War "direct[ed] the Department of War to designate Anthropic a Supply-Chain Risk to National Security" and ordered a secondary boycott, prohibiting all military contractors from conducting business with Anthropic. AR 255B. The Secretary formalized the supply chain risk designation in a determination dated March 3 ("the March Determination"). AR 209. On the morning of March 4, Under Secretary Emil Michael emailed Anthropic's CEO a proposal regarding ongoing negotiations over Anthropic's Usage Policy terms and wrote, "I think we are very close here." Heck Decl. Ex. 1. That evening, at 8:48 p.m. ET, the Department notified Anthropic of the March Determination. Dkt. 166-5 at 7 (Heck Decl. ¶ 21); AR 237-240. Although the March Determination provided no reasoning, the Secretary has belatedly attempted to justify the designation by raising concerns that Anthropic can manipulate its AI models once deployed in classified environments. *See* AR 213-16.

In this action, Anthropic advances constitutional claims and also alleges that the Secretary's February 27 directive and its implementation violate the APA. As to the APA claim, courts follow a general rule that limits review of APA claims to the administrative record. *See* 5 U.S.C. § 706. But the whole administrative record is not necessarily limited to the record proffered by the agency. When the agency has relied on documents not included in the proffered record, a court may order it to complete the record. In certain circumstances, moreover, a court may consider documents outside the administrative record in evaluating an APA claim.

Defendants here have proffered an administrative record for the Department of War on the premise that the March Determination is the relevant agency action. *See* Dkt. 155; *see also* Dkt. 96 at 26-27. Anthropic disputes that premise, as explained below. If the Court accepts that premise, however, then the administrative record for the Department of War is not complete because it

omits the Michael Email. That email is a key record that was before the Department at the time of the March Determination.

The Ramasamy Declaration, while not part of the administrative record, is also properly considered by the Court in this context. It addresses a question the administrative record should have answered (given the Department's stated concerns) but does not: whether Anthropic is technically capable of the conduct the Department says required designating the company a supply chain risk. Among other things, the Ramasamy Declaration explains that Anthropic has no ability to manipulate its AI models once they are deployed in classified environments. That information falls within several recognized exceptions allowing the Court to consider extra-record evidence.

Both of the documents addressed by this motion are already part of the summary judgment record and may be considered by the Court in resolving Anthropic's constitutional claims in any event. *California v. Dep't of Homeland Sec.*, 612 F. Supp. 3d 875, 895 (N.D. Cal. 2020); *see Sierra Club v. Trump*, 929 F.3d 670, 699 (9th Cir. 2019). Under the circumstances here, the Court should also consider them in ruling on Anthropic's motion for summary judgment on the APA claim.

## ARGUMENT

### I.    The Michael Email Is Part Of The Administrative Record

Judicial review of agency action under the APA is based on "the whole record." 5 U.S.C. § 706. The whole record consists of "everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993). It thus encompasses "'all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position.'" *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989).

Although the agency is responsible for producing the administrative record in the first instance, the record is not necessarily limited to "'those documents that the *agency* . . . compiled and submitted.'" *Thompson*, 885 F.2d at 555. "When it appears the agency has relied on documents . . . not included in the record," completion of the record "is appropriate." *Portland Audubon*, 984 F.2d at 1548. After all, "[i]f the record is not complete, then the requirement that

the agency decision be supported by 'the record' becomes almost meaningless." *Id.* To prevail on a motion to complete the record, a plaintiff must identify documents "with sufficient specificity" and provide "'reasonable, non-speculative grounds for the belief'" that they "were considered by the agency." *Sierra Club v. Zinke*, 2018 WL 3126401, at *2 (N.D. Cal. June 26, 2018).

The parties here dispute what constitutes the relevant final agency action. Secretary Hegseth described his February 27 Directive to designate Anthropic a supply chain risk as a "final" decision, "[e]ffective immediately." AR 255B. Anthropic's position is that the February 27 Directive is the relevant final agency action for purposes of its APA claim. *See* Dkt. 166 at 12-13. All subsequent actions by the Department merely implemented that directive, and all documents pertaining to the supply chain risk designation created after February 27 are post-decisional and not properly part of the administrative record. *See id.* at 13. But Defendants argue that the March Determination is the relevant final agency action. *See* Dkt. 96 at 25-26. That Determination is dated March 3, AR 209, but Anthropic did not receive notice of it until March 4, AR 237-38; Heck Decl. ¶ 21, and did not actually receive the Determination itself until March 17, Dkt. 96-2 at 2. For purposes of this motion, Anthropic accepts the Department's characterization of the March Determination as the relevant agency action. If the Court adopts that characterization, then the administrative record Defendants have provided is incomplete.

The Department considered the Michael Email when reaching "the merits" of the March Determination. *Portland Audubon*, 984 F.2d at 1548. Defendants themselves identify Anthropic's refusal to agree to a contract allowing all lawful uses as the dispositive factor in the Department's decision to designate Anthropic a supply chain risk. *See* Dkt. 96 at 23 ("[H]ad Anthropic agreed to the Government's term, the challenged actions would not have occurred."). The Michael Email reflects the Department's own position in the very contract negotiations it has identified as dispositive. In *Thompson*, the Ninth Circuit held that "correspondence concerning . . . settlement negotiations" is "properly part of the administrative record" when it was "before the [agency] at the time of the" challenged decisions. 885 F.2d at 555-56. And Under Secretary Michael sent the email at 9:24 a.m.—hours before the Department provided Anthropic with formal notice. Heck

Decl. Ex. 1. That email was therefore "before" the Department "at the time of [its] decision." *Thompson*, 885 F.2d at 556.

The fact that Under Secretary Michael wrote the email instead of Secretary Hegseth does not change the analysis. The "whole" administrative record "includes 'documents that literally passed before the eyes of the final agency decision maker as well as those considered and relied upon by subordinates who provided recommendations.'" *WildEarth Guardians v. Bernhardt*, 507 F. Supp. 3d 1219, 1227 (C.D. Cal. 2020). Courts have accordingly "rejected attempts to limit administrative records to [only] those documents that were before an agency's senior decisionmakers." *Sharks Sports & Ent. LLC v. Fed. Transit Admin.*, 2020 WL 511998, at *4 (N.D. Cal. Jan. 31, 2020); *see also Nat. Res. Def. Council v. Gutierrez*, 2008 WL 11358008, at *6 (N.D. Cal. Jan. 14, 2008) (same). And here the record establishes that Under Secretary Michael was the key subordinate who recommended that Secretary Hegseth proceed with making and transmitting to Anthropic the March Determination: he wrote the analysis that recommended designating Anthropic as a supply chain risk, and he was charged with conducting the negotiations that Defendants concede were dispositive of the Secretary's ultimate decision.

## II.    The Ramasamy Declaration Is Admissible Extra-Record Evidence

Although judicial review of agency action generally focuses on the administrative record alone, courts may consider extra-record evidence in four situations: "(1) if admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) if 'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'" *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). The Ramasamy Declaration is admissible for purposes of Anthropic's APA claim because it is necessary to determine whether the Department considered all relevant factors and to explain technical terms and complex subject matter, and because it confirms that the Department's proffered justifications are pretextual.

First, the Ramasamy Declaration demonstrates that the Department failed to "consider[] all relevant factors." *Id.* The "relevant factors" exception recognizes that "[i]t will often be

impossible . . . for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not." *Asarco, Inc. v. U.S. Env't Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980). That is the case here. According to Under Secretary Michael, the Department's dealings with Anthropic caused the Department to fear that Anthropic "would cause [its] software to stop working" or "alter the behavior of [its] model in advance or in the middle of ongoing warfighting operations." AR 213, 215. But the declaration reveals that, to the extent that the Department based its decision on this purported concern, it failed to consider the threshold question of whether Anthropic even has the technical capability to turn off or alter the behavior of its models when the Department is using them. As the declaration explains, Anthropic lacks that capability. The company cannot "access, alter, or shut down" a model that has been "deployed in DoW environments." Ramasamy Decl. ¶ 48. Surely whether Anthropic is capable of taking the actions the Department purportedly feared was a relevant factor for the Department to evaluate. Yet the administrative record submitted to this Court contains no analysis of that issue.

Put differently, the Court may rely on the declaration to conclude that the Department did not "compl[y] with the APA's requirement that [its] decision be neither arbitrary nor capricious," because the Department never assessed whether its concerns were grounded in technical reality. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014). To be sure, "[r]eviewing courts may not look to" evidence considered under the "relevant factors" exception "as a basis for questioning the agency's scientific analyses or conclusions." *Id.* Here, however, there are no scientific analyses or conclusions to question. And that is the point: The declaration demonstrates that Anthropic's technical capabilities are "an important aspect of the problem" that the Department "entirely failed to consider." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Second, the Court may consider the Ramasamy Declaration because it explains technical subject matter bearing on the Court's review—namely, how Anthropic's technology functions on Department systems. Determining what Anthropic can and cannot do with its models in this context requires understanding, among other things, the "classified cloud environments" on which

Anthropic's technology is deployed, as well as technical concepts like AI model "guardrails," "weights," and "drift." Ramasamy Decl. ¶¶ 18-27, 30, 33, 48-58. The declaration provides an accessible exposition of these issues, which will aid the Court's assessment of whether the Department has adequately "'explicated its course of conduct or grounds of decision.'" *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1520 n.22 (9th Cir. 1992). "The issues presented by this case are sufficiently complex with the [declaration], let alone without it, to justify using it as needed." *Id.*

Third, the Court may consider the Ramasamy Declaration because Anthropic has made "a showing of agency bad faith." *Lands Council*, 395 F.3d at 1030 (internal quotation marks omitted). "Pretext is the paradigm of agency bad faith" for purposes of deciding whether to supplement the record under the *Lands Council* exception. *Sweet v. DeVos*, 495 F. Supp. 3d 835, 844 (N.D. Cal. 2020). This Court has already recognized that "the proffered reasons" for the Department's actions "appear pretextual" when viewed in light of "[t]he timing of the administrative record" and the "undisputed evidence" at the preliminary-injunction stage about the parties' prior relationship. Dkt. 134 at 36 (P.I. Order). And "[t]he inference of pretext is further reinforced by the inconsistencies in the record," including the Department's ongoing negotiations with Anthropic on March 4 and the Secretary's February 24 threat "to designate Anthropic as essential to national security under the Defense Production Act." *Id.* at 36-37.

The Ramasamy Declaration confirms the pretextual nature of the Department's proffered explanations. The Secretary professed to take action based on an agency memorandum (prepared three days *after* his "final" decision to designate Anthropic a supply chain risk) that was premised on concerns that Anthropic would interfere with the Department's use of Anthropic's AI models during ongoing military operations. The Ramasamy Declaration shows that those concerns are unfounded. Once deployed in secure Department environments, Anthropic has no access to its models, no visibility into their use, and no technical ability to alter or disable them. Ramasamy Decl. ¶ 48-58. It cannot push changes, introduce vulnerabilities, or interfere with operations. *Id.* Extra-record evidence is appropriate in exactly this circumstance: to supply "both sides of the

story" where the agency "never gathered a coherent record." *Esch v. Yeutter*, 876 F.2d 976, 993 (D.C. Cir. 1989).

If the Department had afforded even minimal pre-deprivation process to Anthropic, Anthropic would have submitted materials demonstrating that the Department's asserted concerns were unmoored from technical realities—and then those materials would have been part of the administrative record. The Department may not deprive a party of that opportunity and then "hide behind the administrative record rule" to exclude from judicial review the evidence undermining its position. *Helena Hunters & Anglers Ass'n v. Marten*, 470 F. Supp. 3d 1151, 1166 (D. Mont. 2020).

Defendants' opposition to this Court considering the Ramasamy Declaration is particularly untenable because Defendants themselves included two post-decisional declarations from Under Secretary Michael in the proffered administrative record for the Department of War. *See* AR 243-50, 251-55. No less than the Ramasamy Declaration, those declarations were prepared in litigation, after the Department took every action that Anthropic challenges. If the Department may insert its post-decisional declarations into the administrative record, Anthropic should be allowed to supplement that record with a post-decisional declaration telling the full technical story. That is particularly true because the Department—unlike Anthropic—had every opportunity to develop the record before it acted.

## CONCLUSION

The Court should order Defendants to include the Michael Email in the administrative record for the Department of War, and it should consider the Ramasamy Declaration in evaluating Anthropic's APA claim.

Respectfully submitted,

Date: June 10, 2026

/s/ *Michael J. Mongan*

KELLY P. DUNBAR (*pro hac vice*)
kelly.dunbar@wilmerhale.com
JOSHUA A. GELTZER (*pro hac vice*)
joshua.geltzer@wilmerhale.com
KEVIN M. LAMB (*pro hac vice*)
kevin.lamb@wilmerhale.com
SUSAN HENNESSEY (*pro hac vice*)
susan.hennessey@wilmerhale.com
LAUREN MOXLEY BEATTY (SBN 308333)
lauren.beatty@wilmerhale.com
MATTHEW E. MORRIS (*pro hac vice*)
matt.morris@wilmerhale.com
BARDIA VASEGHI (*pro hac vice*)
bardia.vaseghi@wilmerhale.com
DAKOTA C. FOSTER (*pro hac vice*)
dakota.foster@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000


*Attorneys for Plaintiff Anthropic PBC*

MICHAEL J. MONGAN (SBN 250374)
michael.mongan@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1000

EMILY BARNET (*pro hac vice*)
emily.barnet@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich St
New York, NY 10007
Telephone: (212) 230-8800

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of June, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System.

By:    */s/ Michael J. Mongan*
Michael J. Mongan