Harold Hongju Koh (*admitted pro hac vice*)
harold.koh@ylsclinics.org
Bruce Swartz (*admitted pro hac vice*)
bruce.swartz@ylsclinics.org
Peter Gruber Rule of Law Clinic
Yale Law School
127 Wall Street, P.O. Box 208215
New Haven, CT 06520-8215
203-432-4932

Anthony P. Schoenberg (State Bar No. 203714)
tschoenberg@fbm.com
Alexis Loeb (State Bar No. 269895)
aloeb@fbm.com
John M. Ugai (State Bar No. 318565)
jugai@fbm.com
Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

*Attorneys for Amici Curiae*
FORMER SENIOR NATIONAL
SECURITY GOVERNMENT OFFICIALS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ANTHROPIC, PBC,<br><br>   *Plaintiff,*<br><br>  vs.<br><br>U.S. DEPARTMENT OF WAR, et al.,<br><br>   *Defendants*. | Case No. 3:26-cv-01996-RFL<br><br>**BRIEF OF *AMICI CURIAE* FORMER SENIOR NATIONAL SECURITY GOVERNMENT OFFICIALS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT**<br><br>Hearing Date: July 30, 2026<br>Time:    10:00 A.M.<br>Location:   Courtroom 15<br>Judge    Hon. Rita F. Lin<br><br>Complaint filed:  March 9, 2026 |

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

48419\21120080.8

# TABLE OF CONTENTS

INTEREST OF *AMICI CURIAE*..................................................................................................8

SUMMARY OF ARGUMENT ....................................................................................................8

ARGUMENT ...............................................................................................................................10

I.      THE DESIGNATION OF ANTHROPIC AS A SUPPLY CHAIN RISK IS
        PRETEXTUAL AND THEREFORE UNLAWFUL. ..........................................................10

        A.      The Sequence of Events Here Shows That the Designation Was Pretextual,
                and Intended to Punish Anthropic, Not to Protect the United States. ......................11

        B.      The Administration's Failure to Meet the Statutory Standards for a Supply
                Chain Risk Shows the Designation Was Pretextual, and Therefore
                Unlawful...................................................................................................................12

        C.      The Administration's Failure to Comply with the Statutes' Procedural
                Requirements Shows that the Designation Was Pretextual and Unlawful...............12

        D.      The Administration's Failure to Consider the National Security Risks the
                Designation Entailed Also Demonstrates Its Pretextual Nature..............................13

II.     THE DESIGNATION OF ANTHROPIC AS A SUPPLY CHAIN RISK IS
        UNCONSTITUTIONAL PUNISHMENT-BY-EXECUTIVE. ...........................................18

        A.      The Executive Has No Unilateral Power to Punish. ................................................18

        B.      The First Amendment Forbids Retaliatory Executive Punishment..........................18

        C.      The Constitution's Bill of Attainder Clause Prohibits Executive
                Punishment. ..............................................................................................................20

APPENDIX A ..............................................................................................................................24

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Al-Aulaqi v. Panetta*,
   35 F. Supp. 3d 56 (D.D.C. 2014) ...........................................................................................21

*Am. Ass'n of Univ. Professors v. Rubio*,
   802 F. Supp. 3d 120 (D. Mass. 2025) .....................................................................................19

*Am. Fed'n of Gov't Emps., AFL-CIO v. Noem*,
   785 F. Supp. 3d 833 (W.D. Wash. 2025) ................................................................................19

*Am. Fed'n of Gov't Emps. Loc. 2305 v. United States Dep't of Veterans Affs.*,
   2026 WL 709856 (D.R.I. Mar. 13, 2026) ...............................................................................19

*Am. Bar Ass'n v. U.S. DOJ*,
   783 F. Supp. 3d 236 (D.D.C. 2025) ........................................................................................20

*Amiri v. Kelly*,
   2018 WL 623652 (E.D. Mich. Jan. 30, 2018)..........................................................................21

*Bakken v. United States Mil. Acad.*,
   2026 WL 1469754 (S.D.N.Y. May 26, 2026)..........................................................................19

*Davies v. Young*,
   2013 WL 5450308 (D. Colo. Sep. 30, 2013) ..........................................................................21

*Dep't of Commerce v. New York*,
   588 U.S. 752 (2019) ...........................................................................................9, 10, 11, 13

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020) ....................................................................................................................13

*Encino Motorcars, LLC v. Navarro*,
   579 U.S. 211 (2016) ................................................................................................................14

*Ex parte Garland*,
   71 U.S. (4 Wall.) 333 (1867)...................................................................................................21

*In re Grand Jury Subpoenas*,
   2026 WL 710202 (D.D.C. Mar. 13, 2026).........................................................................10, 19

*Jamaica Ash & Rubbish Removal Co. v. Ferguson*,
   85 F. Supp. 2d 174 (E.D.N.Y. 2000).......................................................................................21

*Jenner & Block LLP v. U.S. Dep't of Just.*,
   784 F. Supp. 3d 76 (D.D.C. 2025) ..........................................................................................19

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

3

48419\21120080.8

*Joint Anti-Fascist Refugee Comm. v. McGrath,*
   341 U.S. 123 (1951) ..............................................................................................................21, 22

*Kadi v. Geithner,*
   42 F. Supp. 3d 1 (D.D.C. 2012) ...................................................................................................21

*Kadic v. Karadzic,*
   70 F.3d 232 (2d Cir. 1995)...........................................................................................................18

*Kelly v. Hegseth,*
   820 F. Supp. 3d 1 (D.D.C. 2026) .................................................................................................19

*Korte v. Off. of Pers. Mgmt.,*
   797 F.2d 967 (Fed. Cir. 1986).....................................................................................................21

*Kovac v. Wray,*
   2020 WL 6545913 (N.D. Tex. Nov. 6, 2020) ..............................................................................21

*L.C. By & Through Cali v. Trump,*
   2026 WL 1329750 (D.D.C. May 13, 2026) ..................................................................................19

*Los Angeles Press Club v. Noem,*
   171 F.4th 1179 (9th Cir. 2026)....................................................................................................20

*Marshall v. Sawyer,*
   365 F.2d 105 (9th Cir. 1966)........................................................................................................21

*Media Matters for Am. v. Fed. Trade Comm'n,*
   805 F. Supp. 3d 105 (D.D.C. 2025) .............................................................................................20

*Nat'l Pub. Radio, Inc. v. Trump,*
   2026 WL 877434 (D.D.C. Mar. 31, 2026)...................................................................................19

*Nat'l TPS All. v. Noem,*
   166 F.4th 739 (9th Cir. 2026).......................................................................................................13

*New York v. Noem,*
   812 F. Supp. 3d 321 (S.D.N.Y. 2025)..........................................................................................20

*Nixon v. Adm'r of Gen. Servs.,*
   433 U.S. 425 (1977) .....................................................................................................................21

*Oregon v. Trump,*
   165 F.4th 1158 (9th Cir. 2025).....................................................................................................13

*Perkins Coie LLP v. U.S. Dep't of Just.,*
   783 F. Supp. 3d 105 (D.D.C. 2025) .......................................................................................19, 21

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

4

48419\21120080.8

*President & Fellows of Harvard Coll. v. United States Dep't of Health & Hum. Servs.*,
798 F. Supp. 3d 77 (D. Mass. 2025) ...............................................................................................19

*Susman Godfrey LLP v. Exec. Off. of President*,
789 F. Supp. 3d 15 (D.D.C. 2025) ..................................................................................................19

*United States v. Russell*,
2025 WL 2452413 (D. Md. Aug. 6, 2025)......................................................................................20

*United States v. Brown*,
381 U.S. 437 (1965) ........................................................................................................................21

*United States v. Stanchich*,
550 F.2d 1294 (2d Cir. 1977)..........................................................................................................11

*United States v. Weber*,
816 F. Supp. 3d 1168 (C.D. Cal. 2026)...........................................................................................13

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*,
784 F. Supp. 3d 127 (D.D.C. 2025) ................................................................................................19

*Zaid v. Executive Office of the President*,
2025 WL 3724884 (D.D.C. Dec. 23, 2025) ..............................................................................19, 21

## FEDERAL STATUTES

10 U.S.C.
§ 111(a) ...........................................................................................................................................10
§ 3252 .............................................................................................................................8, 9, 10, 12

41 U.S.C.
§ 4713 ...................................................................................................................................8, 10, 12

## CONSTITUTIONAL PROVISIONS

U.S. Const. Article I, § 9, cl. 3 ...............................................................................................................20

U.S. Const. Article VI, cl. 2 ....................................................................................................................18

## LEGISLATIVE MATERIALS

Hearing Before the Comm. on Homeland Security and Governmental Affairs,
S. Hrg. 115-588 (2018) ................................................................................................................ 17

## OTHER AUTHORITIES

*Claude's Constitution*, Anthropic (last visited Jun. 11, 2026),
https://www.anthropic.com/constitution ..........................................................................................15

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

5

48419\21120080.8

Dario Amodei, *The Adolescence of Technology: Confronting and Overcoming the Risks of Powerful AI* (Jan. 2026), https://www.darioamodei.com/essay/the-adolescence-of-technology#2-a-surprising-and-terrible-empowerment ...................................15

Dean W. Ball (@deanwball), X (Feb. 27, 2026, 5:46 PM), https://x.com/deanwball/status/2027515599358730315 ......................................................22

Dep't of Defense, *Law of War Manual* (Jun. 2015, updated Jul. 2023) ...........................................18

*The Federalist* No. 69 (Alexander Hamilton) ................................................................................20

Harold Hongju Koh et al., *No, the President Cannot Issue Bills of Attainder*, Just Security (Apr. 9, 2025), https://www.justsecurity.org/110109/president-cannot-issue-attainder-bills/ ................................................................................................................20

Jared Perlo, *Anthropic Says the Pentagon Has Declared It a National Security Risk*, NBC News (Mar. 5, 2026, 7:07 PM), https://www.nbcnews.com/tech/tech-news/anthropic-says-pentagon-declared-national-security-risk-rcna262013...........................15

Karen Freifeld, *Big Tech Group Tells Pentagon's Hegseth They Are 'Concerned' About Anthropic Supply-Chain Risk Designation*, Reuters (Mar. 4, 2026, at 10:45 AM), https://www.reuters.com/business/retail-consumer/big-tech-group-tells-pentagons-hegseth-they-are-concerned-about-declaring-2026-03-04................................14

Kenneth Pickthorn, *Early Tudor Government: Henry VII*, 119 (1934) .........................................20

Lewis Carroll, *Alice's Adventures in Wonderland* 187 (Chi., Volume One Publ'g 1998) (1865)...............................................................................................................................13

Luke Barnes, *The Cost of Conscience: What the Anthropic-Pentagon Feud Means for AI Governance,* Stern Ctr. for Bus. & Hum. Rts. (Feb. 19, 2026), https://bhr.stern.nyu.edu/quick-take/the-cost-of-conscience-what-the-anthropic-pentagon-feud-means-for-ai-governance/ .................................................................................15

Memorandum from Russell T. Vought, Dir., Off. of Mgmt. & Budget, Exec. Off. of the President, Accelerating Federal Use of AI through Innovation, Governance, and Public Trust, The White House (Apr. 3, 2025), https://www.whitehouse.gov/wp-content/uploads/2025/02/M-25-21-Accelerating-Federal-Use-of-AI-through-Innovation-Governance-and-Public-Trust.pdf. ..................................................................................................................15

Mike Stone, Alexandra Alper & Courtney Rozen, *Defense Contractors, Like Lockheed, Seen Removing Anthropic's AI After Trump Ban*, Reuters (Mar. 4, 2026), https://www.reuters.com/sustainability/society-equity/defense-contractors-like-lockheed-seen-removing-anthropics-ai-after-trump-ban-2026-03-04/. ...........................................................................................................................16

*National Security Presidential Memorandum/NSPM-11*, The White House, (June 5, 2026), https://www.whitehouse.gov/presidential-actions/2026/06/national-security-presidential-memorandum-nspm-11/. .......................................................17

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR NATIONAL SECURITY GOVERNMENT OFFICIALS – Case No. 3:26-cv-01996-RFL

6

48419\21120080.8

Pete Hegseth, *The War on Warriors* 96 (2024)...................................................................................17

*Political Declaration on Responsible Military Use of Artificial Intelligence and Autonomy*, U.S. Dept. State (last visited June 12, 2026), https://2021-2025.state.gov/political-declaration-on-responsible-military-use-of-artificial-intelligence-and-autonomy/ ...................................................................................17

Raphael Satter & Courney Rozen, *State Department Switches to OpenAI as US Agencies Start Phasing Out Anthropic*, Reuters (Mar. 2, 2026, 11:12 AM), https://www.reuters.com/business/us-treasury-ending-all-use-anthropic-products-says-bessent-2026-03-02/...................................................................................22

Reuters, *US Security Agency is using Anthropic's Mythos Despite Blacklist, Axios Reports* (Apr. 19, 2026), https://www.reuters.com/business/us-security-agency-is-using-anthropics-mythos-despite-blacklist-axios-reports-2026-04-19/ ................................14

Ryan Goodman, et al.*, The "Presumption of Regularity" in Trump Administration Litigation,* Just Security (Mar. 19, 2026), https://www.justsecurity.org/120547/presumption-regularity-trump-administration-litigation/...................................................................................12

Suzanne Spaulding, John Bellinger, Mary DeRosa, et al.*, The National Security Case for Judicial Review,* Lawfare (Feb. 20, 2026), https://www.lawfaremedia.org/article/the-national-security-case-for-judicial-review ...................................................................................14

Stanford E. Lehmberg, *Parliamentary Attainder in the Reign of Henry VIII*, 18 Hist. J. 675, 675 (1975) ...................................................................................20

Tobias Vestner & Juliette François-Blouin, *Globalizing Responsible AI in the Military Domain by the REAIM Summit*, Just Sec. (Mar. 13, 2023), https://www.justsecurity.org/85440/globalizing-responsible-ai-in-the-military-domain-by-the-reaim-summit/ ...................................................................................17

U.S. General Services Administration, *GSA Stands with President Trump on National Security AI Directive* (Feb. 27, 2026), https://www.gsa.gov/about-us/newsroom/news-releases/gsa-stands-with-president-trump-on-national-security-ai-directive-02272026 ...................................................................................22

*Understanding the Impact of AI on National Security*, MIT Mgmt. Exec. Edu. (Feb. 23, 2025), https://executive.mit.edu/Understanding-the-impact-of-AI-on-national-security.html...................................................................................16

4 William Blackstone, *Commentaries* 373–79...................................................................................20

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

7

48419\21120080.8

## INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* are former senior national security officials, diplomats, intelligence professionals, and subject-matter experts with decades of combined experience in defense procurement, supply chain security, and protecting the United States' technological advantage in matters of national defense. Many *amici* have held senior roles within the White House, National Security Council, Department of State, Department of Defense, Department of Justice, Department of Homeland Security, Office of Management and Budget, and other national security and intelligence institutions, where they implemented or advised on the statutory and constitutional authorities at issue here. Other *amici* have extensive experience evaluating supply chain vulnerabilities, protecting defense systems from infiltration by foreign adversaries, and facilitating responsible integration of emerging technologies into national security operations. *Amici* have no financial interest in the outcome of this litigation.

The perspective of many *amici* is further grounded in their practical experience managing supply chain risks and with the applicable statutory frameworks—including 10 U.S.C. § 3252 and 41 U.S.C. § 4713—and their professional understanding of the conditions under which advanced technologies—including frontier artificial intelligence systems—can be responsibly incorporated into defense and intelligence operations. They submit this brief to assist the Court in understanding how the government's actions in this case distort the national security authorities invoked and thereby risk undermining, rather than advancing, U.S. national security interests.

A full list of *amici* and the government positions they formerly held is in Appendix A.

## SUMMARY OF ARGUMENT

This case is about pretext and punishment. As this Court already has held in granting a preliminary injunction, the Administration's actions against Anthropic "do not appear to be directed at the government's stated national security interests . . . . Instead, these measures appear designed to punish Anthropic." Order Granting Motion for Preliminary Injunction ("Order") at 2, ECF No. 134. Thus, this case presents the question whether the federal government may

---

[1] Counsel for *amici* state that no counsel for a party authored this brief in whole or in part, and that no person other than *amici* or their counsel made a monetary contribution to this brief.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

8

48419\21120080.8

pretextually invoke national security authorities to punish a private U.S. company for resisting the government's attempts to coerce it into taking positions with which it disagrees as a matter of conscience. The stakes here are thus not simply financial, nor are they limited to a single private company. They instead involve the rule of law and our most fundamental freedoms.

As the sequence of events in this case indicates, the designation of Anthropic is purely pretextual: this is punishment, not agency process. The statutory predicates for designation as a supply chain risk were not met, the statutory procedures were not followed, and the relevant policy tradeoffs were not considered. The designation was arbitrary and capricious, and therefore unlawful. *See Dep't of Commerce v. New York*, 588 U.S. 752, 784 (2019).

The designation also violated the Constitution. As a private company, Anthropic has the right to configure its products as it sees fit for lawful uses, just as the Department of Defense has the right to refuse to contract with Anthropic should it prefer a different product. But the Administration's invocations of the supply chain risk statutes to punish Anthropic turn those vital national security authorities on their heads, for it is the Administration—not Anthropic—that has sought to "introduce unwanted function" to Anthropic's AI system. *See* 10 U.S.C. § 3252. The Administration has attempted to force Anthropic to permit its product to be potentially used for two functions—mass domestic surveillance and lethal autonomous weapons systems—that are not only "unwanted" by Anthropic, but that raise serious issues as to their own risks and lawfulness.

The Administration may, of course, argue that these uses are not dangerous and that they comply with both domestic and international law. But the Administration is plainly forbidden from abusing its national security authorities to punish a private company for not agreeing with these arguments. Yet that is what the Administration did here: as this Court has found, "[o]nly when Anthropic went public with its concerns about [the Department of Defense's] contracting position did Defendants set out to publicly punish Anthropic . . . ." Order at 19.

This is, as this Court already has held it appears to be, "classic First Amendment retaliation." Order at 20. The First Amendment bars the government from punishing Anthropic based on its speech or political values—including conscientious beliefs regarding the dangers of certain uses of its system. Likewise, the Bill of Attainder Clause forbids punishment without

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

9

48419\21120080.8

judicial process, as well as the use of the threat of such punishment to try to compel compliance with government demands. Accordingly, the Administration's actions are unlawful for at least two reasons: they are arbitrary and capricious, and they violate fundamental constitutional guarantees.

Because there are no disputed issues of material fact, and the controlling law is clear, the Court should grant summary judgment to Anthropic. The action against Anthropic is but the latest episode in a campaign of pretextual retaliations—often under the guise of emergency national security regulations—that has characterized the second Trump Administration. Since retaking office, President Trump has already attempted to wield the power of the presidency to punish, among others, his political opponents, law firms that hired or represented them, universities with whose administrative decisions he disagreed, journalistic outlets that he considered unfavorable to him, and members of Congress of whose speech he disapproved. Indeed, "[b]eing perceived as the President's adversary has become risky in recent years." *In re Grand Jury Subpoenas*, 2026 WL 710202, at *3 (D.D.C. Mar. 13, 2026). But courts across the country have stood as a bulwark against this Executive coercion and have repeatedly found the Administration's retaliatory actions to be unlawful. In granting summary judgment here, this Court would join the many other courts that have held that neither our Constitution nor our laws permit a punitive Presidency.

## ARGUMENT

### I.     THE DESIGNATION OF ANTHROPIC AS A SUPPLY CHAIN RISK IS PRETEXTUAL AND THEREFORE UNLAWFUL.

The Department of Defense ("DoD" or the "Department") invoked both 10 U.S.C. § 3252 and 41 U.S.C. § 4713 to designate Anthropic as a "supply chain risk."[2] But, as this Court already has suggested, Order at 2, these designations were, in fact, entirely pretextual, as shown by the sequence of events, the failure to satisfy the statutes' substantive and procedural requirements, and the Administration's failure to consider the national security consequences of such designations.

Because it rests on a pretextual basis, the decision here is arbitrary and capricious. *Dep't of Commerce*, 588 U.S. at 784. As in Supreme Court's census decision, *Department of Commerce*,

---

[2] This brief uses the title "Department of Defense" or "DoD" as opposed to "Department of War" because the Department of Defense is established by statute, and any formal name change would require congressional approval. *See* 10 U.S.C. § 111(a). No statutory change has occurred.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR NATIONAL SECURITY GOVERNMENT OFFICIALS – Case No. 3:26-cv-01996-RFL

10

48419\21120080.8

the government's justification for designating Anthropic a supply chain risk is "incongruent with what the record reveals about the agency's priorities and decision-making process." *Id.* at 785. Indeed, the pretext in this case is even less disguised than in *Department of Commerce*. Whereas the justification offered for the action taken in that case was plausible on its face—although belied by the evidence as to *why* the decision was made—the designation here is both entirely implausible *and* refuted by the evidence as to how and why the decision was actually made. Even when reviewing executive action under a deferential standard, this Court is "not required to exhibit a naiveté from which ordinary citizens are free." *Id.* (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.)). So too here: "[T]he evidence tells a story that does not match the explanation the Secretary gave for his decision." *Id.* at 784.

### A. The Sequence of Events Here Shows That the Designation Was Pretextual, and Intended to Punish Anthropic, Not to Protect the United States.

The flimsiness of the Administration's pretext here is demonstrated in the first instance by the sequence of events laid out by this Court in its order granting a preliminary injunction. In March 2025, DoD began usage of Anthropic's AI product, Claude Gov, subject to limitations proposed by Anthropic—and agreed to by the Government—that prohibited its use for domestic mass surveillance or lethal autonomous warfare. Order at 4. In the fall of 2025, however, the Department abruptly changed position and demanded that Anthropic's usage limitations be removed and that any AI company contracting with the Department had to permit "any lawful use." *Id.* at 5. Anthropic stated it was unwilling to remove these guardrails but understood this might mean it was not the "right vendor" and would assist in "offboarding" its product. *Id.* at 6.

Instead of accepting Anthropic's offer to disengage, on February 24, 2026, Secretary of Defense Hegseth told Anthropic that if it did not agree to "all lawful uses" of its products by February 27, 2026, the Department would "immediately designate Anthropic a supply-chain risk and would prevent Anthropic from partnering with [DoD], anyone affiliated with [DoD], or any other agency." *Id.* at 7. Anthropic did not agree, and was subsequently designated a "supply chain risk," exactly as Secretary Hegseth threatened, under both 41 U.S.C. § 4713 and 10 U.S.C. § 3252.

This sequence of events—government demands during negotiations, threat escalations, Anthropic's refusal to alter its safeguards, and a sudden "supply chain risk" designation

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

11

48419\21120080.8

announced on social media without any statutory process—demonstrates that the government sought to wield its statutory authority not because Anthropic suddenly emerged as a supply chain risk, but instead as a pretext to punish Anthropic after negotiations had broken down over DoD's proposed revision of terms of use it had previously accepted.

### B.    The Administration's Failure to Meet the Statutory Standards for a Supply Chain Risk Shows the Designation Was Pretextual, and Therefore Unlawful.

The pretext here is also shown by the Administration's invocation of a statute that is clearly inapplicable. As this Court already has found, "Anthropic's conduct does not appear to be within the definition of 'supply chain risk'" in 10 U.S.C. § 3252. Order at 30. The Court noted that §3252 has never been applied to a domestic company and is "directed principally at foreign intelligence agencies, terrorists, and other hostile actors." *Id.* at 2. Moreover, even assuming a domestic company can be an "adversary" within the meaning of § 3252, "the plain text of the statute is directed at covert acts or hacks, not overt positions taken during contract negotiations." *Id.* at 30. Nor could the Administration explain how Anthropic might "sabotage, maliciously introduce unwanted function, or otherwise subvert" a DoD system. *Id.* at 30-32.

### C.    The Administration's Failure to Comply with the Statutes' Procedural Requirements Shows that the Designation Was Pretextual and Unlawful.

Both of DoD's supply chain risk designations— under § 3252 and under § 4713— were procedurally defective at every turn. As this Court already has found, "[t]he Supply Chain Designation [under § 3252] failed to comply with . . . mandated procedural safeguards," including the required determination that "less intrusive measures are not reasonably available to reduce such supply chain risk." Order at *33.[3] The Administration's actions defeated the common purpose of both § 3252 and § 4713, which is to ensure that supply chain decisions that broadly affect the U.S. government are based on objective national security analyses, not unilateral agency determinations driven by the whims of a particular agency head. DoD's subversion of these procedural frameworks rebuts any presumption of regularity underlying DoD's determinations.[4]

---

[3] The procedural provisions of § 4713(b) were likewise ignored.

[4] *See* Ryan Goodman, et al*., The "Presumption of Regularity" in Trump Administration Litigation,* Just Security (Mar. 19, 2026), https://www.justsecurity.org/120547/presumption-regularity-trump-administration-litigation/ (collecting cases).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR NATIONAL SECURITY GOVERNMENT OFFICIALS – Case No. 3:26-cv-01996-RFL

12

48419\21120080.8

In addition, Secretary Hegseth's announcement of the designation before any of the statutorily mandated procedures for making such designations were completed is further evidence that the supply chain risk designation was pretextual. This was "sentence first—verdict afterwards"[5]: a preordained sentence against Anthropic, with a veneer of process to follow thereafter. Such procedural irregularities indicate pretextual agency action, particularly where those actions lack supporting evidence or deviate from normal practice. Where, as here, an agency fails to follow statutory requirements and processes, a reviewing court may fairly infer that the agency's stated rationale is not the true basis for its decision.[6] As Judges Mendoza and Wardlaw put it, such procedural "deficiencies paint a picture of agency action that was not the product of reasoned decision-making, but of a rushed and pre-determined agenda masked by pretext." *Nat'l TPS All. v. Noem*, 166 F.4th 739, 771, 774 (9th Cir. 2026) (Mendoza & Wardlaw, JJ., concurring).

### D.   The Administration's Failure to Consider the National Security Risks the Designation Entailed Also Demonstrates Its Pretextual Nature.

The designation process required by the supply chain statutes is not a mere box-checking exercise—although the Administration would have failed even such a low bar. In the experience of many *amici*, the statutory processes allow for the essential refinement, and often the resolution, of national security concerns. They require the inclusion of expertise from relevant agencies and allow time to clarify points of contention. And they prevent consequential decisions—such as supply chain risk designations—from turning on disputed or incomplete evidence. Thus, the total lack of analysis of the designation's implications further indicates that it is entirely pretextual.

As an initial matter, DoD did not even attempt to articulate a theory that explains why disabling Anthropic advances national security interests. This failure is fatal. Agencies must articulate a rational connection between the facts found and the choice made. *See Dep't of*

---

[5] Lewis Carroll, *Alice's Adventures in Wonderland* 187 (Chi., Volume One Publ'g 1998) (1865).

[6] *See, e.g.*, *Dep't of Commerce*, 588 U.S. at 784–85; *Oregon v. Trump,* 165 F.4th 1158, 1186 (9th Cir. 2025) (relying on *Dep't of Commerce* in suggesting that the court should review the President's statements surrounding calling the National Guard to Portland); *United States v. Weber*, 816 F. Supp. 3d 1168, 1184 (C.D. Cal. 2026) ("The Court is not required to accept pretextual, formalistic explanations untethered to the reality of what the government has said outside of the courtroom").

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

13

48419\21120080.8

*Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020). And when an agency shirks its duty to provide a "reasoned explanation" for its decision, agency action is arbitrary and capricious.[7] *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

In making the supply chain risk determination at issue here, the Administration also failed to consider numerous national security policy issues. In the first place, the designation deprives the government of what Secretary Hegseth himself recognized as the "exquisite capabilities" of Anthropic's AI technology. Compl. ¶ 98, ECF No. 1. Indeed, the Administration has sought to gain access to Anthropic's latest AI model even during the pendency of this litigation.[8]

But beyond the national security issues presented by depriving the federal government of access to Anthropic's systems, a policy process that complied with the statutes at issue here would have considered how the use of supply chain risk designations as tools of political punishment might threaten a host of U.S. national security priorities, including: (1) the innovation ecosystem, (2) U.S.-China strategic competition, (3) responsible AI development, (4) technological superiority, and (5) the defense industrial base.

Technology companies have already recognized the harm to the innovation ecosystem that could result from arbitrary supply chain designations. Prior to the issuance of the designation challenged here, the Information Technology Industry Council—which comprises leading technology companies, including Amazon, Apple, and NVIDIA—wrote a letter to Defendant Hegseth stating that they were "concerned by recent reports regarding the Department of War's consideration of imposing a supply chain risk designation in response to a procurement dispute."[9]

---

[7] *See* Suzanne Spaulding, John Bellinger, Mary DeRosa, et al.*, The National Security Case for Judicial Review,* Lawfare (Feb. 20, 2026), https://www.lawfaremedia.org/article/the-national-security-case-for-judicial-review (judicial "[s]crutiny of the executive's process also can help ensure the determination reflects a genuine assessment of facts and law.").

[8] *See* Reuters, *US Security Agency is using Anthropic's Mythos Despite Blacklist, Axios Reports* (Apr. 19, 2026), https://www.reuters.com/business/us-security-agency-is-using-anthropics-mythos-despite-blacklist-axios-reports-2026-04-19/.

[9] Karen Freifeld, *Big Tech Group Tells Pentagon's Hegseth They Are 'Concerned' About Anthropic Supply-Chain Risk Designation*, Reuters (Mar. 4, 2026, at 10:45 AM), https://www.reuters.com/business/retail-consumer/big-tech-group-tells-pentagons-hegseth-they-are-concerned-about-declaring-2026-03-04.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

14

48419\21120080.8

As the letter describes, Anthropic's designation threatens "to undermine the government's access to the best-in-class products and services from American companies that serve all agencies and components of the federal government."[10]

This threat to innovation is particularly acute in the context of U.S.-China competition over AI. Michael Sobolik, an expert on AI and China, described this decision as "cutting off our nose to spite our own face," stressing that "[w]e cannot hobble the most innovative, successful American companies for asking quintessentially American questions about military use and privacy."[11]

The statutory processes required here—had they been followed—would have also considered whether the designation of Anthropic undercut national security by undermining incentives for responsible AI development in accordance with the rule of law. Anthropic, a self-described "ethically-oriented AI company,"[12] created Claude's Constitution to help Claude avoid taking actions "that are unsafe, unethical, or deceptive."[13] Yet this very commitment to imposing guardrails for safe deployment of AI resulted in the Pentagon's designation, "send[ing] a clear message to the entire industry: responsibility is a liability."[14] By disincentivizing American companies from investing in safe AI governance, the Pentagon's actions incentivize reckless, and potentially unethical, corporate behavior.

Leadership in AI safety is critical for U.S. national security and technological superiority.[15]

---

[10] *Id.*

[11] Jared Perlo, *Anthropic Says the Pentagon Has Declared It a National Security Risk*, NBC News (Mar. 5, 2026, 7:07 PM), https://www.nbcnews.com/tech/tech-news/anthropic-says-pentagon-declared-national-security-risk-rcna262013.

[12] *See* Dario Amodei, *The Adolescence of Technology: Confronting and Overcoming the Risks of Powerful AI* (Jan. 2026), https://www.darioamodei.com/essay/the-adolescence-of-technology#2-a-surprising-and-terrible-empowerment.

[13] *Claude's Constitution*, Anthropic (last visited Jun. 11, 2026), https://www.anthropic.com/constitution.

[14] Luke Barnes, *The Cost of Conscience: What the Anthropic-Pentagon Feud Means for AI Governance*, Stern Ctr. for Bus. & Hum. Rts. (Feb. 19, 2026), https://bhr.stern.nyu.edu/quick-take/the-cost-of-conscience-what-the-anthropic-pentagon-feud-means-for-ai-governance/.

[15] *See* Memorandum from Russell T. Vought, Dir., Off. of Mgmt. & Budget, Exec. Off. of the President, Accelerating Federal Use of AI through Innovation, Governance, and Public Trust, The White House (Apr. 3, 2025), https://www.whitehouse.gov/wp-content/uploads/2025/02/M-25-21-

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

15

48419\21120080.8

Failure to encourage AI governance leaves space for other states to write their own rules, undermining the United States' role as a global leader in technology—in an area where India and the European Union are already stepping in to fill a perceived vacuum.[16] Because of the way that AI algorithms operate, governance is necessary to verify the accuracy of data inputs and produce accurate results.[17] National security depends on trustworthy, cybersecure, and safe AI platforms.

Because it did not follow the statutory processes, the Administration did not consider how Anthropic's designation would undermine AI governance, and therefore national security, by discouraging companies from ethical self-regulation. The Administration also failed to consider how the designation would significantly disrupt national security by forcing companies across the defense industrial base to stop working with Anthropic and redesign their systems using alternative, arguably less effective, AI platforms. Anthropic was the first AI company to deploy models in the government's classified networks and the first to collaborate with national security customers on custom models. But, adhering to the designation, Lockheed Martin committed to following the government's ban.[18] Other contractors are expected to follow suit. Abruptly wrenching Anthropic out of existing programs threatens to harm national security by disrupting the extensive progress already made on AI-driven defense innovation and modernization.

Finally, the Administration failed to address why our national security would be advanced by removing the guardrails upon which Anthropic insisted. The designation incentivized Anthropic's competitors to provide DoD with the two functions that Anthropic refused to provide: the ability to conduct mass domestic surveillance and deploy lethal autonomous weapons systems. Had the Administration followed the process required by the supply chain statutes, the risks of

---

Accelerating-Federal-Use-of-AI-through-Innovation-Governance-and-Public-Trust.pdf.

[16] Barnes, *The Cost of Conscience: What the Anthropic-Pentagon Feud Means for AI Governance*.

[17] *Understanding the Impact of AI on National Security*, MIT Mgmt. Exec. Edu. (Feb. 23, 2025), https://executive.mit.edu/Understanding-the-impact-of-AI-on-national-security.html.

[18] Mike Stone, Alexandra Alper & Courtney Rozen, *Defense Contractors, Like Lockheed, Seen Removing Anthropic's AI After Trump Ban*, Reuters (Mar. 4, 2026), https://www.reuters.com/sustainability/society-equity/defense-contractors-like-lockheed-seen-removing-anthropics-ai-after-trump-ban-2026-03-04/.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

16

48419\21120080.8

these functions would have been the subject of debate by policymaking officials. Our national security rests most fundamentally on our civil liberties and our respect for the rule of law. But our civil liberties are directly implicated by a Department of Defense that can engage in mass domestic surveillance. Yet the Administration has not even attempted to explain why the Department should have such power, much less how it would exercise that power lawfully.[19]

Similarly, a statutorily-compliant policy process would have considered how the deployment of lethal autonomous weapons systems comports with the United States' commitment to the rule of law. As of November 2024, 57 countries, led by the United States, have endorsed the Political Declaration on Responsible Military Use of Artificial Intelligence and Autonomy, which states that "Military use of AI must be in compliance with applicable international law [and] use of AI in armed conflict must be in accord with States' obligations under international humanitarian law, including its fundamental principles."[20]

Anthropic—based on its technical expertise as the system's creator—considers it unsafe to use Claude Gov for lethal autonomous weapons systems. But even apart from the technical risks identified by Anthropic, the constraints of U.S. and international law would independently justify caution. Although Secretary Hegseth refused to commit in his Senate testimony that the DoD would abide by the Geneva Conventions,[21] all government officials and personnel, including

---

[19] Significantly, in a subsequent National Security Policy Memorandum, the White House itself acknowledged that privacy and civil liberties issues, including regarding surveillance, must be considered in deploying AI in the national security context. *National Security Presidential Memorandum/NSPM-11*, The White House, (June 5, 2026), https://www.whitehouse.gov/presidential-actions/2026/06/national-security-presidential-memorandum-nspm-11/.

[20] *See* Tobias Vestner & Juliette François-Blouin, *Globalizing Responsible AI in the Military Domain by the REAIM Summit*, Just Sec. (Mar. 13, 2023), https://www.justsecurity.org/85440/globalizing-responsible-ai-in-the-military-domain-by-the-reaim-summit/; *Political Declaration on Responsible Military Use of Artificial Intelligence and Autonomy*, U.S. Dept. State (last visited June 12, 2026), https://2021-2025.state.gov/political-declaration-on-responsible-military-use-of-artificial-intelligence-and-autonomy/.

[21] Confirmation Hearing on the Expected Nomination of Mr. Peter B. Hegseth to be Secretary of Defense Before S. Comm. on Armed Services, 119th Cong. 123-124 (Jan. 14, 2025) (statement of Peter B. Hegseth); *see also* Pete Hegseth, *The War on Warriors* 96 (2024) (stating, with regard to the Geneva Conventions, that "[o]ur boys should not fight by rules written by dignified men in

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

17

48419\21120080.8

Hegseth, are of course bound their oath of office to obey them.[22] Accordingly, a robust policy process—like that required by the supply chain risk statutes—would carefully consider, not dismiss, the question whether deployment of lethal autonomous weapons in these circumstances might violate those Conventions and whether a company's design of its product in a manner consistent with the law should render it a national security risk, as opposed to adhering to DoD's own requirement of "lawful use." The failure to consider this critical issue further demonstrates the designation of Anthropic was the product of arbitrary fiat, not reasoned decision-making.

## II.     THE DESIGNATION OF ANTHROPIC AS A SUPPLY CHAIN RISK IS UNCONSTITUTIONAL PUNISHMENT-BY-EXECUTIVE.

### A.     The Executive Has No Unilateral Power to Punish.

The Pentagon's use of a supply chain risk designation as an *ad hoc* punishment of Anthropic is contrary to the terms of the governing statutes. It is also flatly unconstitutional. Like other similar punitive actions that have been taken by the Trump Administration—against law firms, universities, journalists, unions, and numerous other disfavored individuals and institutions—this designation of Anthropic is an unconstitutional exercise of a claimed power that our Constitution denies the President: the power to arbitrarily and unilaterally punish political enemies. That power is forbidden by both the First Amendment and by the Constitution's Bill of Attainder Clause.

### B.     The First Amendment Forbids Retaliatory Executive Punishment.

The First Amendment bars the government from punishing Anthropic based on its speech or political values. This point is readily apparent, as this Court has already found:

> Defendants' conduct appears to be driven not by a desire to maintain operational control when using AI in the military but by a desire to make an example of Anthropic for its public stance on the weighty issues at stake in the contracting dispute. . . . Only when Anthropic went public with its concerns about [DoD's] contracting position did Defendants set out to publicly punish Anthropic . . . .

Order at 19. This, the Court found, "appears to be classic First Amendment retaliation." *Id.* at 20.

_____

mahogany rooms eighty years ago.").

[22] *See* U.S. Const. art. VI, cl. 2 (declaring "Treaties made . . . under the Authority of the United States . . . the supreme Law of the Land"); *Kadic v. Karadzic*, 70 F.3d 232, 242–43 (2d Cir. 1995); *see also* Dep't of Defense, *Law of War Manual* (Jun. 2015, updated Jul. 2023).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR NATIONAL SECURITY GOVERNMENT OFFICIALS – Case No. 3:26-cv-01996-RFL

18

48419\21120080.8

Indeed, although the Administration's rhetoric by this point has become almost normalized, *Amici* note how extraordinary it is—and how contrary to the standards they observed and followed in government service across Administrations of both parties—that the President of the United States would attack a U.S. company as "A RADICAL LEFT, WOKE COMPANY," and explicitly threaten that the company "better get their act together, and be helpful during this phase out period, or I will use the Full Power of the Presidency to make them comply, with major civil and criminal consequences to follow." Order at 8.

Nor is this an isolated case. The actions taken against Anthropic can best be understood as only one part of a campaign of intimidation and retaliation by the Administration against any individual or organization that challenges it. But just as this Court has already done in issuing preliminary relief, numerous other courts have found such retaliatory acts unconstitutional, whether directed against disfavored news organizations,[23] government officials,[24] Democratic legislators,[25] law firms ,[26] universities,[27] professors,[28] human rights advocates,[29] unions,[30]

---

[23] *See, e.g.*, *Nat'l Pub. Radio, Inc. v. Trump*, 2026 WL 877434, at *1 (D.D.C. Mar. 31, 2026).

[24] *See, e.g.*, *In re Grand Jury Subpoenas*, 2026 WL 710202, *1, *10.

[25] *See, e.g.*, *Kelly v. Hegseth*, 820 F. Supp. 3d 1, 18 (D.D.C. 2026), *appeal filed* No. 26-5070 (D.C. Cir. Feb. 27, 2026).

[26] *See Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 168 (D.D.C. 2025); *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76 (D.D.C. 2025); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127 (D.D.C. 2025) as amended, 2025 WL 2105262 (Jun. 26, 2025); *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15 (D.D.C. 2025). The Administration appealed these cases, along with *Zaid v. Executive Office of the President*, 2025 WL 3724884, (D.D.C. Dec. 23, 2025).

[27] *See, e.g.*, *President & Fellows of Harvard Coll. v. United States Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d 77, 123 (D. Mass. 2025).

[28] *See, e.g.*, *Am. Ass'n of Univ. Professors v. Rubio*, 802 F. Supp. 3d 120, 131 (D. Mass. 2025), *appeal filed*, No. 26-1195 (1st Cir. Feb. 24, 2026); *Bakken v. United States Mil. Acad.*, 2026 WL 1469754, at *29 (S.D.N.Y. May 26, 2026).

[29] *See, e.g.*, *L.C. By & Through Cali v. Trump*, 2026 WL 1329750, at *1 (D.D.C. May 13, 2026), *appeal filed sub nom.*, *Massimiliano Cali v. Trump*, No.26-5172 (D.C. Cir. May 20, 2026).

[30] *See, e.g.*, *Am. Fed'n of Gov't Emps. Loc. 2305 v. United States Dep't of Veterans Affs.*, 2026 WL 709856, at *7 (D.R.I. Mar. 13, 2026), *appeal filed* No. 26-1321 (1st Cir. Mar.2026); *Am. Fed'n of Gov't Emps., AFL-CIO v. Noem*, 785 F. Supp. 3d 833, 860 (W.D. Wash. 2025).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

19

48419\21120080.8

journalists,[31] states,[32] the American Bar Association,[33] or the federal courts themselves.[34] The target in each case is different but the threat is the same, and the reasoning of those cases—finding the threats unconstitutional—applies equally here.

### C. The Constitution's Bill of Attainder Clause Prohibits Executive Punishment.

Even apart from the First Amendment, the Constitution's Bill of Attainder Clause separately denies the President the unilateral power to punish. Executives ranging from British kings to early colonial governors attempted to wield their power to impose arbitrary punishment without the process afforded by judicial trial.[35] That is what the President seeks to do here. The President has chosen to target Anthropic because it refused to adhere to his demands. In doing so, President Trump claims a power to declare Anthropic guilty and impose punishment—a power previously known in English common law and the U.S. Constitution as the power to "attaint."[36]

But the Constitution's categorical ban on attainder forecloses the President's actions here. Our constitutional and common-law tradition has long recognized that no executive, not even the British king, may assert a unilateral power to attaint.[37] Even a British king seeking to attaint could not do so acting alone; he needed to convince Parliament to pass a "bill of attainder," which would declare an accused guilty and impose punishment.[38] The Framers would have rebelled at the notion that the American President could possess a power denied even to the British king.[39]

---

[31] *See, e.g.*, *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1189 (9th Cir. 2026); *Media Matters for Am. v. Fed. Trade Comm'n*, 805 F. Supp. 3d 105, 112 (D.D.C. 2025), *appeal dismissed*, 2026 WL 1354245 (D.C Cir. May 4, 2026).

[32] *See, e.g.*, *New York v. Noem*, 812 F. Supp. 3d 321, 325 (S.D.N.Y. 2025).

[33] *Am. Bar Ass'n v. U.S. DOJ,* 783 F. Supp. 3d 236 (D.D.C. 2025).

[34] *See, e.g., United States. v. Russell*, 2025 WL 2452413 (D. MD. Aug. 6, 2025).

[35] *See* Harold Hongju Koh et al., *No, the President Cannot Issue Bills of Attainder*, Just Security (Apr. 9, 2025), https://www.justsecurity.org/110109/president-cannot-issue-attainder-bills/.

[36] *See* 4 William Blackstone, *Commentaries* 373–79; U.S. Const. art. I, § 9, cl. 3.

[37] *See* Stanford E. Lehmberg, *Parliamentary Attainder in the Reign of Henry VIII*, 18 Hist. J. 675, 675 (1975).

[38] *See* Kenneth Pickthorn, *Early Tudor Government: Henry VII*, 119 (1934).

[39] *See The Federalist No.* 69 (Alexander Hamilton) (declaring that the President's authority would be "in substance much inferior to" "that of the king of Great Britain").

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

20

48419\21120080.8

The Framers saw the prohibition of attainders as key to the separation of powers, to ensure that the power of the judiciary is not usurped. But the judicial province would be no less invaded by an attainder issued by the executive alone than by one issued by the executive and the legislature acting together.[40] As Justice Black explained in *Joint Anti-Fascist Refugee Comm. v. McGrath*, it cannot be that the Framers "who outlawed the bill of attainder, inadvertently endowed the executive with [the] power to engage in the same tyrannical practices that had made the bill such an odious institution." 341 U.S. 123, 144 (1951) (Black, J., concurring).

The District Court for the District of Columbia came to the same conclusion in *Zaid v. Executive Office of the President*.[41] There, the court held that the plaintiff had plausibly alleged that President Trump's summary revocation of his security clearance violated the Bill of Attainder Clause. As the court stated, "it is hard to imagine the Framers would have prohibited legislative bills of attainder while leaving the executive branch free to attaint whomever it likes."[42]

Finally, it is clear that the designation here is punishment of the type forbidden by the Bill of Attainder Clause. Throughout American history, courts have explained that an unlawful attainder consists of action which (1) applies with specificity and (2) imposes punishment without process. DoD's designation of Anthropic—which without evidence or reason, first singles out

---

[40] *See id.*; *United States v. Brown*, 381 U.S. 437, 445 (1965) ("The Bill of Attainder Clause was intended . . . as an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function."); *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 380 (1867) ("A bill of attainder is a legislative act which inflicts punishment without a judicial trial."); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977) ("[A] bill of attainder [is] a law that legislatively determines guilt and inflicts punishment" without "a judicial trial").

[41] *Zaid,* 2025 WL 3724884, at *16. Some courts have declined to apply the Bill of Attainder Clause to executive actions. *See Marshall v. Sawyer*, 365 F.2d 105, 111 (9th Cir. 1966); *Korte v. Off. of Pers. Mgmt.*, 797 F.2d 967, 972 (Fed. Cir. 1986); *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 82 (D.D.C. 2014); *Kovac v. Wray*, 2020 WL 6545913, at *3 (N.D. Tex. Nov. 6, 2020); *Davies v. Young*, 2013 WL 5450308, at *12 (D. Colo. Sep. 30, 2013); *Amiri v. Kelly*, 2018 WL 623652, at *13 (E.D. Mich. Jan. 30, 2018), *aff'd*, 818 F.App'x 523 (6th Cir. July 2, 2020); *Jamaica Ash & Rubbish Removal Co. v. Ferguson*, 85 F. Supp. 2d 174, 184-85 (E.D.N.Y. 2000); *Kadi v. Geithner*, 42 F. Supp. 3d 1, 42–43 (D.D.C. 2012), *appeal dismissed*, 2012 WL 3243996 (D.C Cir. July 31, 2012).

[42] *Zaid,* 2025 WL 3724884, at *16 (citing *McGrath*, 341 U.S. at 144 (Black, J., concurring)); *see also Perkins Coie LLP*, 783 F. Supp. 3d at 173 n. 36 (calling into question the "assumption" that the Bill of Attainder Clause applies only to Congress).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

21

48419\21120080.8

Anthropic, and second, punishes it—meets both these prongs.

Defendants' designation of Anthropic as a supply chain risk punished Anthropic by stripping it of both government contracts and the opportunity to do business with government contractors. The Pentagon replaced Anthropic with OpenAI in a contract of up to $200 million. The leaders of the Departments of State, Treasury, and Health and Human Services told employees to stop using Anthropic, switching to OpenAI or Google's Gemini.[43] The General Services Administration removed Anthropic from its Multiple Award Schedule, cutting it off from a platform facilitating $52.5 billion in sales in FY25 to federal, state, and local governments.[44] One former advisor to President Trump called the designation "attempted corporate murder."[45] That the murder has not been successful so far does not negate that it was attempted.

The government's actions here thus "possess almost every quality of [an unlawful] bill[] of attainder." *McGrath*, 341 U.S. at 143–44 (Black, J., concurring). They function as a "prepared and proclaimed government blacklist[]," *id.*, punishing Anthropic without any formal investigation, trial, or even informal process. The Pentagon's decision here had nothing to do with national security. Instead, the President decided to punish Anthropic for perceived political and ideological disloyalty. He then set the entirety of the Executive Branch to the task of fulfilling his will. Allowing the Government to proceed in its campaign of attainder against Anthropic would warp valuable national security devices into tools of political abuse.

In sum, the threat here is not *to* the DoD and its warfighting abilities. To the contrary, the threat comes *from* the DoD and the Administration itself. That threat is not simply to Anthropic, but also to our country's commitment to the rule of law.

---

[43] Raphael Satter & Courney Rozen, *State Department Switches to OpenAI as US Agencies Start Phasing Out Anthropic*, Reuters (Mar. 2, 2026, 11:12 AM), https://www.reuters.com/business/us-treasury-ending-all-use-anthropic-products-says-bessent-2026-03-02/.

[44] U.S. General Services Administration, *GSA Stands with President Trump on National Security AI Directive* (Feb. 27, 2026), https://www.gsa.gov/about-us/newsroom/news-releases/gsa-stands-with-president-trump-on-national-security-ai-directive-02272026.

[45] Dean W. Ball (@deanwball), X (Feb. 27, 2026, 5:46 PM), https://x.com/deanwball/status/2027515599358730315.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

22

48419\21120080.8

Dated: June 26, 2026

By: _____
_/s/ Alexis Loeb_
Alexis Loeb

Harold Hongju Koh (*admitted pro hac vice*)[46]
harold.koh@ylsclinics.org
Bruce Swartz (*admitted pro hac vice*)
bruce.swartz@ylsclinics.org
Peter Gruber Rule of Law Clinic[47]
Yale Law School
127 Wall Street, P.O. Box 208215
New Haven, CT 06520-8215
Telephone: (203) 432-4932

Anthony P. Schoenberg (State Bar No. 203714)
tschoenberg@fbm.com
Alexis Loeb (State Bar No. 269895)
aloeb@fbm.com
John M. Ugai (State Bar No. 318565)
jugai@fbm.com
Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for *Amici Curiae*
FORMER SENIOR NATIONAL
SECURITY GOVERNMENT OFFICIALS

---

[46] Law student interns, including Avi Gupta, contributed to this brief's drafting under supervision by counsel for *amici*.

[47] This brief sets forth the position of the signatories, as represented by counsel and law student members of the Peter Gruber Rule of Law Clinic but does not purport to state the views of Yale Law School or Yale University.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

23

48419\21120080.8

## APPENDIX A

The list that follows identifies the individual *amici* and the government positions they formerly held:

- **Donald Ayer –** Deputy Attorney General (1989–1990); Principal Deputy Solicitor General (1986–1988); United States Attorney, Eastern District of California (1982–1986)

- **John B. Bellinger III –** Legal Adviser, Department of State (2005–2009); Senior Associate Counsel to the President and Legal Adviser, National Security Council (2001–2005)

- **Mary DeRosa –** Deputy Counsel to the President and Legal Adviser, National Security Council (2009–2011)

- **Jon Finer –** Principal Deputy National Security Advisor (2021–2025); Director of Policy Planning, Department of State (2016–2017)

- **Stuart Gerson –** Acting Attorney General (1993); Assistant Attorney General (Civil) (1989–1993); Assistant United States Attorney for the District of Columbia (1972–1975)

- **Avril Haines –** Director of National Intelligence (2021–2025); Deputy National Security Advisor (2015–2017)

- **Peter Keisler –** Acting Attorney General (2007); Assistant Attorney General (Civil) (2003–2007)

- **Mary B. McCord** – Acting Assistant Attorney General for National Security (2016-2017); Principal Deputy Assistant Attorney General for National Security (2014-2017); Assistant United States Attorney for the District of Columbia (1994-2014)

- **James C. O'Brien –** Assistant Secretary of State for European and Eurasian Affairs (2023–2025); Head, Office of Sanctions Coordination, Department of State (2022–2023); Special Envoy for Hostage Affairs (2015–2017)

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR
NATIONAL SECURITY GOVERNMENT
OFFICIALS – Case No. 3:26-cv-01996-RFL

24

48419\21120080.8

- **Nuala O'Connor –** Member, President's Board on Safeguarding Americans' Civil Liberties (2004–2005); Chief Privacy Officer, Department of Homeland Security (2003–2005); Chief Counsel, Technology Administration and Chief Privacy Officer, Department of Commerce (2002–2003); Deputy Director, Policy & Strategic Planning, Department of Commerce (2001–2002)

- **Alan Raul –** Associate Counsel to the President (1986–1988); General Counsel, Office of Management and Budget (1988–1989); Vice Chairman of the Privacy and Civil Liberties Oversight Board (2006–2008)

- **Susan E. Rice –** Domestic Policy Advisor (2021–2023); National Security Advisor (2013–2017); United States Ambassador to the United Nations (2009–2013)

- **Paul Rosenzweig –** Special Advocate, Data Protection Review Court (2023-2025); Deputy Assistant Secretary for Policy, Department of Homeland Security (2005–2009)

- **Nicholas Rostow –** General Counsel and Senior Policy Adviser to the United States Permanent Representative to the United Nations (2001–05); Special Assistant to the President for National Security Affairs and Legal Adviser, National Security Council (1987–93)

- **Wendy Sherman –** Deputy Secretary of State (2021–2023); Undersecretary for Political Affairs, Department of State (2011–2015)

- **Suzanne Spaulding –** Undersecretary, Department of Homeland Security (2013–2017); Minority Staff Director, House Permanent Select Committee on Intelligence (2003–2004); General Counsel, Senate Select Committee on Intelligence (1995–1998); Associate/Assistant General Counsel, Central Intelligence Agency (1989–1995)

- **Jake Sullivan –** National Security Advisor (2021–2025); National Security Advisor to the Vice President (2013–2014); Director of Policy Planning, Department of State (2011–2013)

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

BRIEF OF *AMICI CURIAE* FORMER SENIOR NATIONAL SECURITY GOVERNMENT OFFICIALS – Case No. 3:26-cv-01996-RFL                    25                    48419\21120080.8