MICHAEL J. MONGAN (SBN 250374)
michael.mongan@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1000

EMILY BARNET (*pro hac vice*)
emily.barnet@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

*Attorneys for Plaintiff Anthropic PBC*

KELLY P. DUNBAR (*pro hac vice*)
kelly.dunbar@wilmerhale.com
JOSHUA A. GELTZER (*pro hac vice*)
joshua.geltzer@wilmerhale.com
KEVIN M. LAMB (*pro hac vice*)
kevin.lamb@wilmerhale.com
SUSAN HENNESSEY (*pro hac vice*)
susan.hennessey@wilmerhale.com
LAUREN MOXLEY BEATTY (SBN 308333)
lauren.beatty@wilmerhale.com
MATTHEW E. MORRIS (*pro hac vice*)
matt.morris@wilmerhale.com
BARDIA VASEGHI (*pro hac vice*)
bardia.vaseghi@wilmerhale.com
DAKOTA C. FOSTER (*pro hac vice*)
dakota.foster@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHROPIC PBC,<br><br>            Plaintiff,<br><br>      v.<br><br>U.S. DEPARTMENT OF WAR, et al.,<br><br>            Defendants. | Case No. 3:26-cv-01996-RFL<br><br>**ANTHROPIC PBC'S REPLY IN SUPPORT OF MOTION TO COMPLETE THE ADMINISTRATIVE RECORD AND TO CONSIDER EVIDENCE OUTSIDE THE ADMINISTRATIVE RECORD**<br><br>Judge: Hon. Rita F. Lin<br><br>Hearing Date: July 30, 2026<br>Time: 10:00 a.m. PT |

**INTRODUCTION**

Defendants argue (Dkt. 214 ("U.S. Br.") at 16-17) that Secretary Hegseth's determination dated March 3 (the "March Determination") is the relevant final agency action. As Anthropic has explained (Dkt. 166 ("Ant. Br.") at 12-13), that is incorrect: the relevant final agency action is Secretary Hegseth's February 27 Directive, which he described as "final" and "[e]ffective immediately." AR 255B. If the Court accepts Defendants' argument, however, then the administrative record that Defendants proffered is insufficient. In that event, the Court should order Defendants to complete the administrative record by including Under Secretary Michael's March 4 Email. Defendants do not rebut the "clear evidence" Anthropic provided that the Michael Email informed the Department's decision to issue the March Determination and thus is part of the administrative record. *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021). The Court should also consider the Ramasamy Declaration (Dkt. 166-4) in evaluating Anthropic's APA claim. Defendants themselves rely on that Declaration for technical points in their own cross-motion for summary judgment, U.S. Br. 20, even as they ask the Court to disregard it here. And their arguments for excluding the Declaration misunderstand and misapply *Lands Council v. Powell*, 395 F.3d 1019 (9th Cir. 2005).

**ARGUMENT**

**I.     The Michael Email Is Part Of The Administrative Record**

Courts generally "presume that an 'agency properly designated the Administrative Record,'" but a plaintiff may overcome that presumption by identifying "'clear evidence to the contrary.'" *Goffney*, 995 F.3d at 748 (cited at Dkt. 213 ("Admin. Record Opp.") at 2). Anthropic has provided clear evidence that the Michael Email was "considered by" Department decisionmakers before the Secretary's decision was finalized. *See* Dkt. 169 ("Admin. Record Mot.") at 4-5. Defendants offer two arguments against including the Michael Email in the administrative record: (1) the email is post-decisional, because Under Secretary Michael sent it after Secretary Hegseth signed the March Determination, and (2) Secretary Hegseth did not personally consider the email when he decided to designate Anthropic under 10 U.S.C. § 3252. Both arguments lack merit.

First, the Michael Email is pre-decisional by any sensible measure. Under Secretary Michael

sent the email on the morning of March 4. Heck Decl. Ex. 1 (Dkt. 166-6). While the March Determination is dated March 3, the Department did not provide Anthropic with notice of it until late in the evening of March 4. Heck Decl. ¶ 21; AR 237-240. Until that time, the "agency decisionmakers" remained "'free to change their minds,'" so nothing final had occurred. *U.S. Fish and Wildlife Serv. v. Sierra Club*, 592 U.S. 261, 269 (2021). In practical terms, the email was both pre-decisional and "before the agency" at the time of the action. *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993).

The email itself proves the point: Michael said the parties were "very close" to an agreement but that he was "running out of time." Heck Decl. Ex. 1. If a final decision had already been made, and legal consequences imposed, time would already have run out. Defendants' contrary approach to final agency action would invite gamesmanship—as this case illustrates. On Defendants' view, so long as an agency signs a decisional document in advance and then holds it back for additional consideration or discussions with outside parties, the agency can shield those additional materials from the record. Such manipulation cannot be squared with the whole-record rule, which guards against an agency providing a "'fictional account of the actual decisionmaking process.'" *Portland Audubon.*, 984 F.2d at 1548.

Second, it does not matter whether Secretary Hegseth himself directly considered the Michael Email. *See* Admin. Record Opp. 2. The whole record encompasses "'all documents and materials directly or *indirectly* considered by agency decision-makers.'" *Thompson v. DOL*, 885 F.2d 551, 555 (9th Cir. 1989). This "includes 'documents that literally passed before the eyes of the final agency decision maker as well as those considered and relied upon by subordinates who provided recommendations.'" *WildEarth Guardians v. Bernhardt*, 507 F. Supp. 3d 1219, 1227 (C.D. Cal. 2020); *see also Sharks Sports & Ent. LLC v. Fed. Transit Admin.*, 2020 WL 511998, at *4 (N.D. Cal. Jan. 31, 2020) (rejecting "attempts to limit administrative records to [only] those documents that were before an agency's senior decisionmakers"); *Nat. Res. Def. Council v. Gutierrez*, 2008 WL 11358008, at *6 (N.D. Cal. Jan. 14, 2008) (same).

Defendants offer no answer to this straightforward rule. Nor could they: it would be implausible to contend that Under Secretary Michael did not rely on his own correspondence

negotiating with Anthropic when he advised Secretary Hegseth about whether and when to issue the March Determination. Correspondence of that kind—reflecting negotiations on which the agency relied—is "properly part of the administrative record" when it was "before the [agency] at the time of the" challenged decisions. *Thompson*, 885 F.2d at 556. It is irrelevant whether the Secretary personally set eyes on the Michael Email.

Finally, even if the Court disagrees that the Michael Email is part of the administrative record, the Court should still consider the email as extra-record evidence under *Lands Council*, 395 F.3d 1019. As Anthropic has explained, the email provides powerful evidence that Defendants' proffered rationales for the March Determination are pretextual. Ant. Br. 19-20. *Lands Council* accordingly allows the Court to consider the Michael Email in evaluating Anthropic's APA claim, *see* 395 F.3d at 1030; *see also Sweet v. DeVos*, 495 F. Supp. 3d 835, 844 (N.D. Cal. 2020).

## II.     The Ramasamy Declaration Is Admissible Extra-Record Evidence

Defendants do not dispute that courts may consider extra-record evidence: "(1) if admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) if 'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'" *Lands Council*, 395 F.3d at 1030. As Anthropic explained (Admin. Record Mot. 5-8), the Ramasamy Declaration is admissible under three of these exceptions. Defendants' arguments to the contrary (Admin. Record Opp. 3-5) misapprehend each applicable exception.

To start, Defendants wrongly contend that the declaration does not qualify for the "relevant factors" exception because Anthropic seeks to use it to "'question[]'" the Department's "'scientific analyses or conclusions.'" Admin. Record Opp. 3. But Defendants conducted no scientific analyses that Anthropic could question. Under Secretary Michael's risk assessment asserts that Anthropic could "disallow[] its software to function in critical military operations," AR 213, but the risk assessment never analyzes whether that is even possible. The Ramasamy Declaration demonstrates that Defendants' failure to conduct such analysis was a critical oversight. Ant. Br. 20. In addition, Defendants have offered a purported concern that Anthropic could "alter the behavior of [its]

model[s] in advance" of deployment in harmful ways. U.S. Br. 6, 11, 17-19. In response, Anthropic relies on the Ramasamy Declaration to show that the Department's testing protocols make that risk illusory—a factor the record documents fail to consider. *See* Dkt. 234 at 17; *see* AR 213-16 (no discussion of testing).

In each instance, Anthropic deploys the Ramasamy Declaration to highlight issues "the agency should have considered but did not"—exactly what the "relevant factors" exception allows. *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980). If Anthropic were "'debat[ing] the merits'" of the Department's analysis, Admin. Record Opp. 3, one would expect to see some debate between the parties about whether the Declaration's technical explanations are correct. But there is none. Indeed, Defendants' own cross-motion for summary judgment relies on the Ramasamy Declaration to explain an otherwise ignored feature of the Department's testing regime. U.S. Br. 20 (quoting Ramasamy Decl. ¶ 55). The fact that Defendants needed to look beyond the administrative record and rely on the Ramasamy Declaration in their own papers further confirms that the agency did not consider all relevant factors at the time of its final decision.

Defendants also dispute (Admin. Record Opp. 3) the application of *Lands Council*'s exception for circumstances where extra-record information "'is necessary to explain technical terms or complex subject matter.'" 395 F.3d at 1030. That argument fares no better. Defendants do not contest that the supply chain risk designation rests on assertions about what Anthropic can do with its models and when. *See* AR 213-216. Nor do they deny that these assertions implicate technical matters, such as the extent of Anthropic's access to its models post-deployment and the details of the Department's testing protocol. The administrative record does not supply the technical context that would allow the Court to understand those issues and assess whether the Department's claims have a factual basis. Again, Defendants rely on the Declaration to explain a complex feature of the Department's testing regime. U.S. Br. 20 (quoting Ramasamy Decl. ¶ 55). Having invoked the Declaration for this "highly technical" context, they can hardly maintain that the existing record is sufficient to explain that context. *Love v. Thomas*, 858 F.2d 1347, 1356 (9th Cir. 1988).

As for the *Lands Council*'s "bad faith" exception, 395 F.3d at 1030, Defendants' merits arguments prove Anthropic's point. Anthropic explained that the Declaration confirms that the

Department's proffered explanations were pretextual because the Department's purported concern—that Anthropic would exercise an operational veto—was "unfounded." Admin. Record Mot. 7. Defendants now insist that "whether Anthropic has real-time access to its AI model after it is deployed on DoW's systems is not DoW's true concern." Admin. Record Opp. 4. That flies in the face of Defendants' previous representations. *See, e.g.*, AR 213-14 (emphasizing risk that Anthropic would "disallow[] its software to function in critical military operations"); AR 247 (highlighting risk that Anthropic might "interfere" with Claude "during an operation"); AR 249-50 (stating that Anthropic could "make unilateral changes" to the model the Department "currently uses"); Dkt. 96 at 8 (noting risk that Anthropic could "shut[] off access to" or "alter [the] functionality" of its model "during an operation").[1] As courts have recognized in other contexts, when a decisionmaker gives "different reasons" for an action at "different times," that may "show that the stated reason was pretextual." *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997). Far from rebutting Anthropic's showing of pretext, Defendants' abandonment of their prior rationale reinforces that showing.

Defendants also assert that Anthropic is "attempt[ing] to slip in information . . . that it should have submitted first to DoW." Admin. Record Opp. 5. That is meritless. Until Defendants' opposition to Anthropic's preliminary injunction motion in this suit (Dkt. 96), Anthropic had received only a boilerplate letter that contained no discussion of the purported factual basis for the March Determination. *See* AR 237-38. The notion that Anthropic should have submitted the Ramasamy Declaration in response to the Department's notification letter, sent nearly two weeks prior, defies logic. *See* AR 237-40; Heck Decl. Ex. 2 (notification received March 4). A party cannot respond to rationales it has never seen.

Nor was Anthropic obligated to seek reconsideration in the midst of this litigation. *Contra* Admin. Record Opp. 5. Section 3252 contains no reconsideration requirement—or even any process for seeking reconsideration. Moreover, Secretary Hegseth had already announced the supply chain

---

[1] This is not Defendants' only about-face. At the preliminary injunction stage, Defendants claimed that, if Anthropic had "agreed to the Government's [contract] term, the challenged actions would not have occurred." Dkt. 96 at 14. Now, they maintain that the Department's concerns existed "regardless of DoW's contractual rights." Admin. Record Opp. 4.

risk designation on February 27 in a "final" decision that had taken effect "immediately," AR 255B. After Anthropic filed suit and introduced a similar declaration from Mr. Ramasamy at the preliminary injunction stage, Dkt. 115, Under Secretary Michael submitted an opposing declaration making clear that the Department's view remained unchanged, Dkt. 120-1. And Under Secretary Michael was the Secretary's lead adviser on this issue: he wrote the risk assessment on which the March Determination is based and "has the 'institutional and subject matter expertise' to prepare 'Section 3252 supply chain risk assessments relating to AI issues.'" U.S. Br. 22 (quoting AR 244-45). In these circumstances, for Anthropic to avail itself of an extra-statutory process for seeking reconsideration of the March Determination would have been "clearly useless," because the Department had "evidenced a strong stand on the issue in question and an unwillingness to reconsider" its position. *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105-06 (D.C. Cir. 1986).

Finally, if the Court declines to consider the Ramasamy Declaration in evaluating Anthropic's APA claim, it should also decline to consider Under Secretary Michael's two litigation declarations. *See* AR 243-50, 251-55. Those declarations are no less post-decisional: they were submitted to respond to the points made by Mr. Ramasamy and others in declarations filed in this litigation. It would be a perverse application of the administrative record rule if an agency could rely on its own post-decisional declarations to respond to a plaintiff's evidence while depriving the Court of any ability to consider that evidence.

## CONCLUSION

The Court should order Defendants to complete the administrative record for the Department of War with the Michael Email, and it should consider the Ramasamy Declaration in evaluating Anthropic's APA claim.

Respectfully submitted,

Date: July 8, 2026

*/s/ Michael J. Mongan*

KELLY P. DUNBAR (*pro hac vice*)
kelly.dunbar@wilmerhale.com
JOSHUA A. GELTZER (*pro hac vice*)
joshua.geltzer@wilmerhale.com
KEVIN M. LAMB (*pro hac vice*)
kevin.lamb@wilmerhale.com
SUSAN HENNESSEY (*pro hac vice*)
susan.hennessey@wilmerhale.com
LAUREN MOXLEY BEATTY (SBN 308333)
lauren.beatty@wilmerhale.com
MATTHEW E. MORRIS (*pro hac vice*)
matt.morris@wilmerhale.com
BARDIA VASEGHI (*pro hac vice*)
bardia.vaseghi@wilmerhale.com
DAKOTA C. FOSTER (*pro hac vice*)
dakota.foster@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000

MICHAEL J. MONGAN (SBN 250374)
michael.mongan@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1000

EMILY BARNET (*pro hac vice*)
emily.barnet@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

*Attorneys for Plaintiff Anthropic PBC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of July, 2026, I electronically filed the foregoing document using the CM/ECF System, that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

By:  */s/ Michael J. Mongan*
Michael J. Mongan