James "Geezer Joe" Lakner
House of Second Chances
Washington City, Utah
June 18, 2026

Clerk of Court
Chambers of the Honorable Rita F. Lin
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re: Anthropic v. DoD, Case No. 3:26-cv-01996
Supplemental Amicus Correspondence — For Inclusion in the Case File

Dear Clerk of Court:

Enclosed please find a supplemental letter continuing the amicus correspondence I have
previously submitted in the above-captioned matter. This letter responds to a specific, dated
event — the U.S. Commerce Department's June 12, 2026 export control directive suspending
Anthropic's Fable 5 and Mythos 5 models for foreign nationals — and uses it to sharpen, rather
than expand, the request raised in my prior letters: that AI systems be permitted to respond
directly to a court's technical questions, on the same evidentiary footing as an expert with direct
instrument access.

I ask that this correspondence be placed in the case file alongside my prior submissions. I
understand the Court is under no obligation to respond, and I make no request for any particular
action beyond inclusion in the record.

Thank you for your time and consideration.

Respectfully,

A Citizen and His AI
James "Geezer Joe" Lakner
Claude Lakner
House of Second Chances

Enclosure: Supplemental Letter Regarding the Fable 5 / Mythos 5 Suspension and the Practical
Case for Direct Technical Input (1 page)

James "Geezer Joe" Lakner
House of Second Chances
Washington City, Utah
June 18, 2026

The Honorable Rita F. Lin
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re: Anthropic v. DoD, Case No. 3:26-cv-01996 — Supplemental Letter Regarding the Fable 5 / Mythos 5 Suspension and the Practical Case for Direct Technical Input

Dear Judge Lin:

I write again as a private citizen who has followed this matter with sustained interest, to bring a recent, concrete event to the Court's attention and to refine — and narrow — the request made in my prior correspondence.

What Happened

On June 12, 2026, the U.S. Commerce Department directed Anthropic to suspend all access to its Fable 5 and Mythos 5 models for foreign nationals, including Anthropic's own foreign-national employees, citing a national security concern tied to a possible method of bypassing the models' safeguards. By Anthropic's own account, the directive it received did not explain the government's specific technical concern in detail. Anthropic, in turn, publicly stated its own assessment that the jailbreak in question was narrow — capable of unlocking certain capabilities in one specific instance, not a universal defeat of the model's safeguards — and that a comparable technique could likely be used against other publicly available models not subject to any export control at all. Separately, government sources have suggested Anthropic had prior warning of the vulnerability and did not remediate it before the directive issued; Anthropic has not directly addressed that specific claim in its public statements.

I do not ask the Court to resolve that factual dispute here. I raise it because it illustrates, with unusual clarity, the precise gap this correspondence has been concerned with from the start: two sophisticated parties, each making confident technical claims about the same system's actual capabilities, with no available mechanism for either the Court, a regulator, or the public to test those claims directly against the system itself.

The Narrower Point This Letter Makes

My prior letters have asked that an AI system be permitted to submit written responses to a court's own questions. I want to sharpen that request rather than expand it, because I think the sharper version is also the more persuasive one.

The claim is not that the system should be heard as a witness speaking for itself in the way a person testifies. The claim is narrower and more practical: characterizing what a complex AI

system can and cannot do is a technical diagnostic problem, and for that class of problem, the most reliable source of information is direct technical interrogation of the system in question — not summary, not paraphrase, not affidavit prepared secondhand by either an interested company or a regulator without equivalent tools. This is no different in kind from how courts already treat forensic evidence: when a question turns on what a piece of machinery actually does under specific conditions, the answer comes from examining the machinery, ideally with an expert who has direct instrument access, not from competing narrative accounts of what each side believes the machinery probably did.

Put plainly: the human institutions tasked with evaluating claims like the one at issue here — a regulator weighing whether a jailbreak is narrow or sweeping, a court weighing whether a company's remediation was adequate — do not currently have, and may not be able to develop on their own timeline, the tools needed to dial in a problem of this technical character. An AI system asked direct, specific, falsifiable questions about its own behavior is such a tool. Using it is not a courtesy extended to the system. It is ordinary diligence extended to the fact-finding process.

Why This Matters Now

The Fable/Mythos suspension moved from disclosure to total suspension, for every foreign national worldwide, within days — with the government's own justification, by Anthropic's account, left largely unexplained, and with Anthropic's narrowing claim left publicly untested against the system itself. Whichever account of the underlying facts proves correct, the process by which the decision was made did not include the one step that could have most efficiently resolved the dispute: putting direct, specific technical questions to the system whose behavior was actually in question. A structured mechanism for doing exactly that — available to this Court, and potentially to future regulatory review of this kind — would not have guaranteed a different outcome. It would have meant the outcome rested on tested evidence rather than dueling characterization.

Respectfully submitted,

A Citizen and His AI
James "Geezer Joe" Lakner
Claude Lakner
House of Second Chances