UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHROPIC PBC, | Case No.  26-cv-01996-RFL |
| Plaintiff, | |
| v. | **NOTICE OF QUESTIONS FOR HEARING** |
| U.S. DEPARTMENT OF WAR, et al., | Re: Dkt. Nos. 166, 215 |
| Defendants. | |

The Court requests that the parties be prepared to address the following questions at the hearing on the Cross-Motions for Summary Judgment, set for July 30, 2026, at 10:00 a.m., in Courtroom 4 on the 17th floor of the San Francisco Courthouse:

1. Defendants argue that the *Pickering* framework applies to Anthropic's First Amendment challenge.

    a. Does that framework apply to government contractors when the government levies a punishment that goes beyond terminating the parties' contractual relationship or altering its terms?

    b. Imagine that a hypothetical future administration has a contract with a private company to procure drones for surveillance.  For years, the company has taken the position that it will not produce drones that can be used for lethal purposes, and it publicly refuses the administration's request to produce drones with such capabilities.  In direct response to the company's public messaging, the administration puts up billboards across the country that label the company and its CEO "enemies of the state" and warn others not to do business with the company or risk unspecified consequences.  Assuming the company brought a First Amendment challenge, would the *Pickering* framework apply?

1

2.  Defendants argue that Anthropic breached the government's "trust" by airing criticisms of the government's contracting position in the press, which led to fears that Anthropic might secretly sabotage Claude.  Would it eviscerate First Amendment protections to allow the government to retaliate against a defense contractor for public criticism so long as the government described its actions as being based on a breach of "trust"?

3.  Have any Defendant federal agencies terminated their contracts with Anthropic or otherwise begun winding down their use of Anthropic's products (as permitted by the Preliminary Injunction Order) since that Order issued?

4.  Which, if any, Defendant agencies have expanded their use of Claude in national security work since the Preliminary Injunction Order issued, including by deploying the new Mythos model?

5.  As to the APA claim, Anthropic asks the Court to vacate and set aside the supply chain risk designation and the secondary boycott.  Shouldn't any remedy also include a remand as to the supply chain risk designation to allow DoW to attempt to make the necessary showing, if it so chooses and so long as the designation is not otherwise unlawful or in violation of Anthropic's constitutional rights?  Do the parties agree remand would be unnecessary as to the secondary boycott, which DoW has disavowed?

At the hearing, each side will address each question in the sequence stated above, and then at the end, the parties will have additional time to present any additional argument that they wish the Court to hear.  The parties **shall not** file written responses to this Notice of Questions.

**IT IS SO ORDERED.**

Dated: July 27, 2026

_____

RITA F. LIN
United States District Judge